**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MARK R. LASKOWSKI and RICHARD HALL,

                    Plaintiffs,

- against -

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

                    Defendant.

Civil Action No.
5:11-cv-340 (GLS/ATB)

## PLAINTIFFS' MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Finley T. Harckham, Esq.
Dennis J. Artese, Esq.
Marc T. Ladd, Esq.
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 278-1000

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................1

PRELIMINARY STATEMENT ......................................................................1

STATEMENT OF FACTS .............................................................................2

ARGUMENT ...............................................................................................3

I.   LEGAL STANDARD..............................................................................3

II.   CHOICE OF LAW ..............................................................................4

III.   PLAINTIFFS' COMPLAINT SUFFICIENTLY ALLEGES THAT LIBERTY
BREACHED ITS IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING IN
DENYING PLAINTIFFS' CLAIM...........................................................4

IV.   PLAINTIFFS' COMPLAINT SUFFICIENTLY ALLEGES THAT LIBERTY
VIOLATED N.Y. GBL § 349 ...............................................................11

CONCLUSION...........................................................................................17

# TABLE OF AUTHORITIES

Page

## CASES

*Acquista v. New York Life Insurance Co.,*
285 A.D.2d 73, 730 N.Y.S.2d 272 (1st Dep't 2001) ....................................passim

*Bi-Economy Market, Inc. v. Harleysville Insurance Co. of New York,*
10 N.Y.3d 187, 886 N.E.2d 127, 856 N.Y.S.2d 505 (2008)..........................passim

*Chaffee v. Farmers New Century Insurance Co.,*
No. 5:04-CV-1493, 2008 WL 4426620 (N.D.N.Y. Sept. 24, 2008) ...................... 10

*Chambers v. Time Warner, Inc.,*
282 F.3d 147 (2d Cir. 2002) ....................................................................... 4, 7, 15

*Chernish v. Massachusetts Mutual Life Insurance Co.,*
No. 5:08-CV-0957, 2009 WL 385418 (N.D.N.Y. Feb. 10, 2009) ................... 7, 8, 9

*Consolidated Risk Services, Inc. v. Automobile Dealers WC Self Insurance Trust,*
No. 1:06-CV-871, 2007 WL 951565 (N.D.N.Y. Mar. 27, 2007) ........................... 16

*Dano v. Royal Globe Insurance Co.,*
89 A.D.2d 817, 453 N.Y.S.2d 528 (4th Dep't 1982), *aff'd,* 59 N.Y.2d 827,
451 N.E.2d 488, 464 N.Y.S.2d 741 (1983) ....................................................... 6, 7

*Elacqua v. Physicians' Reciprocal Insurers,*
52 A.D.3d 886, 860 N.Y.S.2d 229 (3d Dep't 2008) .............................................. 11

*Erickson v. Pardus,*
551 U.S. 89, 127 S. Ct. 2197 (2007).................................................................... 4

*Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York,*
375 F.3d 168 (2d Cir. 2004).................................................................................. 3

*Gaidon v. Guardian Life Insurance Co. of America,*
94 N.Y.2d 330, 725 N.E.2d 598, 704 N.Y.S.2d 177 (1999)................................. 12

*Goldmark, Inc. v. Catlin Syndicate Ltd.,*
No. 09-CV-3876, 2011 WL 743568 (E.D.N.Y. Feb. 24, 2011) ............................ 10

*Handy & Harman v. American International Group., Inc.,*
No. 0115666/2007, 2008 WL 3999964 (N.Y. Sup. Ct. New York Cnty.
Aug. 25, 2008) .................................................................................................... 10

*Joannou v. Blue Ridge Insurance Co.*,
    289 A.D.2d 531, 735 N.Y.S.2d 786(2d Dep't 2001) ............................................ 11

*Jonas v. New York Central Mutual Fire Insurance Co.*,
    244 A.D.2d 916, 665 N.Y.S.2d 189 (4th Dep't 1997) ............................................ 6

*Kurschner v. Massachusetts Casualty Insurance Co.*,
    No. 08-CV-0011, 2009 WL 537504 (E.D.N.Y. Mar. 3, 2009) ......................... 12-13

*New York University v. Continental Insurance Co.*,
    87 N.Y.2d 308, 662 N.E.2d 763, 639 N.Y.S.2d 283 (1995) .................... 4-5, 13, 14

*O.K. Petroleum Distribution Corp. v. Travelers Indemnity Co.*,
    No. 09 Civ. 10273, 2010 WL 2813804 (S.D.N.Y. July 15, 2010) .................... 9, 10

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20, 647 N.E.2d 741, 623 N.Y.S.2d 529 (1995) ............................ 11, 14

*Panasia Estates, Inc. v. Hudson Insurance Co.*,
    10 N.Y.3d 200, 886 N.E.2d 135, 856 N.Y.S.2d 513 (2008) ................................ 8

*Phelps v. Kapnolas*,
    308 F.3d 180 (2d Cir. 2002) ............................................................................. 3

*Quick Response Commercial Division, LLC v. Travelers Property Casualty Co. of America*,
    No. 1:09-cv-00651, 2009 WL 3334600 (N.D.N.Y. Oct. 14, 2009) .................. 9, 10

*Riordan v. Nationwide Mutual Fire Insurance Co.*,
    756 F. Supp. 732 (S.D.N.Y. 1990) ............................................................... passim

*Runge v. Erie Insurance Group*,
    No. 09CV792A, 2010 WL 5860401 (W.D.N.Y. May 24, 2010) ........................... 14

*Rusyniak v. Gensini*,
    629 F. Supp. 2d 203 (N.D.N.Y. 2009) ............................................................... 4

*Scavo v. Allstate Insurance Co.*,
    238 A.D.2d 571, 657 N.Y.S.2d 193 (2d Dep't 1997) ......................................... 11

*Schwartz v. Liberty Mutual Insurance Co.*,
    539 F.3d 135 (2d Cir. 2008) ............................................................................. 4

Page

*Shebar v. Metropolitan Life Insurance Co.,*
    25 A.D.3d 858, 807 N.Y.S.2d 448 (3d Dep't 2006) ............................................. 15

*Weixel v. Board of Education of New York,*
    287 F.3d 138 (2d Cir. 2002) ............................................................................. 3

*Wilner v. Allstate Insurance Co.,*
    71 A.D.3d 155, 893 N.Y.S.2d 208 (2d Dep't 2010) ................................. 11, 12, 16

*Woodworth v. Erie Insurance Co.,*
    743 F. Supp. 2d 201 (W.D.N.Y. 2010) .................................................................. 9

**STATUTES**

Fed. R. Civ. P. 8(a)(2)..................................................................................................... 4

Fed. R. Civ. P. 12(b)(6)............................................................................................ 1, 3, 7

N.Y. Gen. Bus. Law § 349 .....................................................................................passim

N.Y. Ins. Law § 2601 .................................................................................................... 16

11 N.Y.C.C.R. § 216 ..................................................................................................... 16

## INTRODUCTION

Plaintiffs, Mark R. Laskowski and Richard Hall (collectively, "Plaintiffs"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in Opposition to defendant Liberty Mutual Fire Insurance Company's ("Liberty" or "Defendant") Motion to Dismiss Plaintiffs' first, third, and fourth causes of action pursuant to Fed. R. Civ. P. 12(b)(6), dated April 8, 2011.[1]

## PRELIMINARY STATEMENT

This action arises out of Liberty's failure and refusal to honor its obligations under a standard-form homeowners fire insurance policy to pay Plaintiffs for property damage and other covered losses they suffered as a result of a fire that destroyed their home on January 10, 2010. Despite the presence of significant facts that clearly demonstrate the accidental nature of the fire, Liberty's purported investigation turned a blind eye to those facts, and Liberty still falsely accuses Plaintiffs of purposefully setting the fire to their home. As a result, Liberty has breached its obligations under the policy.

Moreover, in continuing to deny Plaintiffs' claim in bad faith, Liberty also has breached the covenant of good faith and fair dealing by unreasonably and maliciously putting its own pecuniary interests ahead of those of the Plaintiffs and withholding from the Plaintiffs the rights and benefits to which they are entitled under the policy. Under New York law, Liberty's malicious actions in violation of this duty entitle Plaintiffs to an award of consequential damages. Additionally, Plaintiffs have also sufficiently alleged that Liberty has engaged in conduct that violates N.Y. Gen. Bus. Law

---

[1] Plaintiffs are not contesting the portion of Defendant's motion to dismiss Plaintiffs' first cause of action; their claim for Declaratory Judgment.

§ 349 ("GBL § 349") by selling standard homeowners fire insurance policies to the general public and routinely avoiding or delaying payment under those policies and engaging in other unfair settlement practices. Plaintiffs have sufficiently alleged these claims against Liberty, and thus, Liberty's motion to dismiss Plaintiffs' third and fourth causes of action should be denied.

## STATEMENT OF FACTS

On January 10, 2010, a fire (the "Fire") caused significant damage to Plaintiffs' home at 5758 Mill Street, Eaton, New York (the "Home") and its contents, among which were valuable antiques. Compl. ¶¶ 7, 9.[2]  For the policy period of January 1, 2010 through January 1, 2011, Liberty sold Plaintiffs a standard-form LibertyGuard Deluxe Homeowners Policy No. H32-221-361798-900 3 (the "Policy"), which insured Plaintiffs against the risk of, among other things, fire to the Home. Compl. ¶ 8. After Plaintiffs promptly notified Liberty of the damage to their Home and its contents (the "Claim"), Liberty purportedly investigated the cause of the Fire, but ignored substantial evidence demonstrating the accidental nature of the Fire, including the conclusions of the Madison County fire investigator responsible for investigating the Fire at the Home. Compl. ¶¶ 10, 13.

Plaintiffs retained their own consultants (the "Consultants")  to investigate the cause and origin of the Fire, and they concluded that the Fire was accidental, and Plaintiffs offered to share the Consultants' findings with Liberty to aid Liberty's investigation. Compl. ¶¶ 14-15.  Though Liberty initially agreed to meet with the Consultants, it reneged on its promise and nevertheless denied Plaintiffs' Claim one

---

[2]      "Compl." refers to Plaintiffs' Complaint, filed February 16, 2011, located at Docket Entry #1 on the Court's CM/ECF system.

year after the Fire, maintaining that Plaintiffs had failed to cooperate with Liberty's purported investigation and that Plaintiffs set the Fire to their Home or caused the Fire to be set. Compl. ¶¶ 16, 11. Because of Liberty's denial of coverage, damage to the Home has worsened significantly, and Plaintiffs incurred and continue to incur substantial additional living expenses. Compl. ¶¶ 18-20. Despite paying all premiums due and owed in connection with the Policy, complying with all applicable conditions of the Policy, and fully cooperating with Liberty in pursuit of their Claim, Liberty not only has refused to pay any portion of Plaintiffs' Claim, but also unjustifiably cancelled Plaintiffs' current homeowners policy for the Home. Compl. ¶¶ 23-25, 21.

## ARGUMENT

## I.    LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 145 (2d Cir. 2002). Indeed, at the motion to dismiss stage, the issue "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Phelps v. Kapnolas*, 308 F.3d 180, 184-85 (2d Cir. 2002) (stating that "it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test."). The task of the Court in ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004) (quotation marks and citation omitted).

Moreover, regarding the sufficiency of the complaint under Fed. R. Civ. P. 8(a)(2), the complaint need not set out in detail "specific facts" concerning the claims, but rather just factual allegations sufficient "to raise a right to relief above the speculative level to a plausible level." *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 214 (N.D.N.Y. 2009) (citing *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007)). Finally, when deciding a motion to dismiss, courts must accept "all factual allegations in the complaint as true, and draw all reasonable inferences in plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). As discussed below, Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing and violation of GBL § 349 meet this minimalist standard.

## II.    CHOICE OF LAW

Liberty apparently has taken the position that New York law applies to Plaintiffs' claims, and Plaintiffs agree. Plaintiffs are New York residents, Liberty handled Plaintiffs' Claim from its Syracuse office, Liberty conducts substantial business in New York, and New York is the location of the insured risk. New York has the most significant relationship to the transaction and the parties, and therefore, New York law should be applied. *Cf. Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135 (2d Cir. 2008).

## III.   PLAINTIFFS' COMPLAINT SUFFICIENTLY ALLEGES THAT LIBERTY BREACHED ITS IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING IN DENYING PLAINTIFFS' CLAIM

"As in all contracts, implicit in contracts of insurance is a covenant of good faith and fair dealing, such that 'a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims.'" *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 194, 886 N.E.2d 127, 131, 856 N.Y.S.2d 505, 509 (2008) (citing *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318, 662

N.E.2d 763, 639 N.Y.S.2d 283 (1995)). More than a contract for money, when the policyholder purchases an insurance policy, it is bargaining for "peace of mind, or comfort, of knowing that it will be protected in the event of a catastrophe." *Id.* As explained below, Plaintiffs sufficiently have alleged that, through its bad faith conduct in "investigating" Plaintiffs' loss and then denying their Claim without any evidence of wrongdoing, Liberty has breach its duty of good faith and fair dealing to Plaintiffs. This claim is not duplicative of Plaintiffs' breach of contract claim, and is valid under New York law to seek extra-contractual damages.

Liberty asserts that Plaintiffs' allegations are legally insufficient to support a claim for breach of the covenant of good faith and fair dealing because "the Complaint fails to allege anything beyond a mere insurance coverage dispute between Plaintiffs and Liberty." Liberty MOL at 6.[3] According to Liberty, Plaintiffs' Complaint just states that (1) Plaintiffs' notified Liberty of their claim; (2) which prompted an investigation; and (3) Liberty denied coverage. *Id.* Therefore, Liberty contends, it could not have acted in "gross disregard" of Plaintiffs' interests. *Id.* Merely glancing at the face of Plaintiffs' Complaint, however, proves Liberty's characterization of Plaintiffs' allegations to be incorrect and disingenuous.

Plaintiffs' alleged not only a coverage dispute, but specific examples of Liberty's misconduct during its investigation and denial of Plaintiffs' fire loss. Despite being promptly notified of the Fire, which rendered the Home uninhabitable, Liberty did not issue its denial of coverage until one year later. Compl. ¶¶ 10-11. During its purported "investigation" of Plaintiffs' loss, Liberty willfully ignored substantial evidence

---

[3]      "Liberty MOL" refers to Liberty's Memorandum of Law in Support of its Motion to Dismiss, filed April 8, 2011, located at Docket Entry #14 on the Court's CM/ECF system.

demonstrating the accidental nature of the Fire, including the conclusions of the Madison County fire investigator who investigated the Fire. Compl. ¶ 13. Moreover, before issuing its denial of coverage, Liberty refused to meet with Plaintiffs' own fire consultants, who had concluded that the Fire was indeed accidental. Compl. ¶ 16.

Additionally, Liberty improperly and without justification cancelled Plaintiffs' current homeowners policy for the Home. Compl. ¶¶ 19, 21. By disclaiming coverage without considering the above-mentioned evidence, and engaging in other such acts of misconduct, Plaintiffs alleged that Liberty put its own pecuniary interests ahead of those of the Plaintiffs, and acted in "egregious disregard" of its obligations under the Policy, so as to breach the covenant of good faith and fair dealing implied in the Policy. Compl. ¶¶ 40-45.

Nevertheless, Liberty maintains that Plaintiffs have not sufficiently alleged their misconduct, relying on the Fourth Department's decision in *Dano v. Royal Globe Ins. Co.*, 89 A.D.2d 817, 453 N.Y.S.2d 528 (4th Dep't 1982), *aff'd*, 59 N.Y.2d 827, 451 N.E.2d 488, 464 N.Y.S.2d 741 (1983), where the court held that, on a motion for summary judgment, the plaintiffs had failed to prove that the insurer was guilty of a "disingenuous or dishonest failure to carry out the contract." *Id.* at 819, 453 N.Y.S.2d at 530. Indeed, the court in *Dano* refused plaintiffs any additional discovery to prove the malice requirement necessary to defeat defendant's common interest privilege on their claim for defamation. *Id.* at 817, 453 N.Y.S.2d at 529; *see also Jonas v. N.Y. Cent. Mut. Fire. Ins. Co.*, 244 A.D.2d 916, 917, 665 N.Y.S.2d 189, 190 (4th Dep't 1997) (dismissing plaintiff's claim for breach of duty of good faith on summary judgment because plaintiff failed to raise an issue of fact).

*Dano* is thus wholly inapposite. The instant motion is a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). No formal discovery has taken place. At this stage of the case, all that is necessary is that Plaintiffs adequately alleged that Liberty acted in disregard of their interests, not that Plaintiffs prove those facts as in *Dano*. *Chambers*, 282 F.3d at 152. As described above, Plaintiffs have more than sufficiently alleged such conduct to withstand a motion to dismiss on their claim that Liberty breached its duty of good faith and fair dealing. *See Acquista v. New York Life Ins. Co.*, 285 A.D.2d 73, 82, 730 N.Y.S.2d 272, 279 (1st Dep't 2001) (allegations of an insurer's bad faith "may be employed to interpose a claim for consequential damages beyond the limits of the policy for the claimed breach of contract.").

Liberty also asserts that because the duty of good faith is implied in every insurance contract, Plaintiffs' claim for Liberty's breach of good faith is entirely duplicative of its breach of contract claim, and thus, cannot be asserted as a separate cause of action for Liberty's bad faith claims handling. Liberty MOL at 4. However, in arguing that Plaintiffs may not seek recovery for Liberty's breach of good faith and fair dealing and may only pursue its breach of contract claim, Liberty relies upon case law that pre-dates the Court of Appeals' decision in *Bi-Economy Market*, which the Northern District has recognized as having "certainly [] changed the [legal] landscape" with respect to extra-contractual damages. *Chernish v. Mass. Mut. Life Ins. Co.*, No. 5:08-CV-0957, 2009 WL 385418, at *4 (N.D.N.Y. Feb. 10, 2009) (rejecting insurance company's argument that plaintiff could not separately plead a claim for breach of covenant of good faith and fair dealing where the conduct arises out of the administration of a contract of insurance).

Plaintiffs agree with Liberty that New York does not recognize an independent tort for insurer bad faith. Liberty MOL at 4. However, where an insurance company has breached the covenant of good faith and fair dealing, and has acted in bad faith with respect to its policyholder, New York has recognized a claim for extra-contractual damages, which can be maintained together with a separate claim for contractual damages for breach of contract. *See Chernish*, 2009 WL 385418 at \*3 n.13 ("In any event, *Bi-Economy Market* upheld separate causes of action 'for bad faith claims handling, ... and breach of contract."). Accordingly, "consequential damages resulting from a breach of the covenant of good faith and fair dealing may be asserted in an insurance context, so long as the damages were 'within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting....'" *Panasia Estates, Inc. v. Hudson Ins. Co.*, 10 N.Y.3d 200, 203, 886 N.E.2d 135, 137, 856 N.Y.S.2d 513, 515 (2008).

Here, Plaintiffs' claimed loss for their Home and living expenses are covered under the Policy. However, due to Liberty's continued bad faith denial of Plaintiffs' claim, the damage to the Home has "significantly worsened," requiring Plaintiffs to incur increased costs to restore the Home to its pre-loss condition. Compl. ¶ 18. Moreover, "Plaintiffs have incurred and will continue to incur substantial additional living expenses ... as a result of Liberty's improper refusal to pay," and to the extent those expenses are in excess of the Policy's limit, they too are recoverable as consequential damages. Compl. ¶ 20. To paraphrase the Court of Appeals in *Bi-Economy Market*, "the very purpose of [homeowners insurance] would have made [Liberty] aware that if it breached its obligations under the contract to investigate in good

8

faith and pay covered claims it would have to respond in damages to [Plaintiffs] for [the increased cost to repair the Home and additional living expenses in excess of the policy limit]." 10 N.Y. 3d at 195, 886 N.E.2d at 132, 856 N.Y.S.2d at 510; *Chernish*, 2009 WL 385418 at *4; *see Woodworth v. Erie Ins. Co.*, 743 F. Supp. 2d 201, 218 (W.D.N.Y. 2010) (stating that additional living expenses are consequential damages for the breach of good faith and fair dealing under *Bi-Economy Market*, but dismissing claim because Plaintiffs failed to plead "consequential damages" in the complaint). These costs are in excess of the Policy's limit and are a foreseeable result of Liberty's bad faith breach of the Policy, and as such, Plaintiffs properly alleged in their that Liberty's egregious disregard of its obligations under the Policy and Plaintiffs' interests requires the imposition of consequential damages. Compl. ¶¶ 42, 45.[4]

Moreover, Plaintiffs' claim for breach of the covenant of good faith and fair dealing is not duplicative of its breach of contract claim, since Plaintiffs' Complaint alleges more than just denial of coverage by Liberty in breach of the Policy. *See O.K. Petroleum Distribution Corp. v. Travelers Indem. Co.*, No. 09 Civ. 10273, 2010 WL 2813804, at *4 (S.D.N.Y. July 15, 2010). As stated above, Liberty's denial of coverage was not only improper, but also unreasonable since Liberty failed to investigate Plaintiffs' Claim appropriately, turning a blind eye to critical, exculpatory evidence. Compl. ¶¶ 13, 16. Liberty also violated applicable insurance regulations during its claims handling process and improperly cancelled Plaintiffs' current homeowners policy.

---

[4]     Additionally, Plaintiffs' claim for attorneys' fees in bringing this action may constitute consequential damages flowing from Liberty's bad faith breach of the Policy. *See Quick Response Commercial Div., LLC v. Travelers Prop. Cas. Co. of Am.*, No. 1:09-cv-00651, 2009 WL 3334600, at *2 (N.D.N.Y. Oct. 14, 2009) (J. Sharpe); *Chernish*, 2009 WL 385418 at *5.

Compl. ¶¶ 49, 21. Accordingly, Plaintiffs have sufficiently alleged that Liberty breached the covenant of good faith that is separate and distinct from Liberty's breach of the Policy. *O.K. Petroleum*, 2010 WL 2813804 at *4.

At the very least, a determination as to whether Plaintiffs' claim for breach of good and fair dealing is duplicative of their breach of contract claim is premature at this stage of the proceedings to support a motion to dismiss.[5] *See Quick Response*, 2009 WL 3334600 at *1 (J. Sharpe) (denying insurance company's motion to dismiss claim for breach of covenant of good faith and fair dealing where proceeding was still in its pleading stages). Nevertheless, even if the Court determines that Plaintiffs' claim for breach of the covenant of good faith and fair dealing should not constitute a separate cause of action, because Plaintiffs have demonstrated that their allegations sufficiently state that Liberty breached this duty by acting in bad faith, such allegations should be maintained, as should their claim for consequential damages, and should be incorporated into their breach of contract claim. *See, e.g., Handy & Harman v. Am. Int'l Grp., Inc.*, No. 0115666/2007, 2008 WL 3999964 (N.Y. Sup. Ct. New York Cnty. Aug. 25, 2008); *see also Goldmark, Inc. v. Catlin Syndicate Ltd.*, No. 09-CV-3876, 2011 WL 743568, at *4 (E.D.N.Y. Feb. 24, 2011); *Chaffee v. Farmers New Century Ins. Co.*, No. 5:04-CV-1493, 2008 WL 4426620, at *5 (N.D.N.Y. Sept. 24, 2008). Accordingly, Plaintiffs' have sufficiently alleged under New York law that Liberty breached the implied covenant of good faith, and their claim should not be dismissed.

---

[5]     Also, at this stage of the proceedings, Plaintiffs' do not claim to have asserted a right to punitive damages. Plaintiffs reserve the right to move to amend their Complaint in the future to seek punitive damages if the facts discovered during discovery warrant such relief.

## IV. PLAINTIFFS' COMPLAINT SUFFICIENTLY ALLEGES THAT LIBERTY VIOLATED N.Y. GBL § 349

Plaintiffs also have adequately alleged in their Complaint that Liberty's conduct of routinely avoiding payment of coverage benefits under its standard-form homeowners' policy and other bad faith settlement practices violates GBL § 349. "Stating a cause of action to recover damages for violation of General Business Law § 349 is fairly straightforward and should identify consumer-orientated misconduct which is deceptive and materially misleading to a reasonable consumer, and which causes actual damages." *Wilner v. Allstate Ins. Co.*, 71 A.D.3d 155, 161-62, 893 N.Y.S.2d 208, 214 (2d Dep't 2010) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 647 N.E.2d 741, 744-45, 623 N.Y.S.2d 529, 532-33 (1995)). The insurer's conduct must be consumer-oriented, that is, "having the potential to affect the public at large...." *Elacqua v. Physicians' Reciprocal Insurers*, 52 A.D.3d 886, 888, 860 N.Y.S.2d 229, 231 (3d Dep't 2008). To this point, Liberty maintains that its denial of coverage under the Policy involved "only a private, contractual dispute" that was unique to Plaintiffs and Liberty, and therefore, Plaintiffs did not successfully allege a violation of GBL § 349.

Liberty is incorrect. It is well-established under New York law that "[a]n insurance carrier's failure to pay benefits allegedly due to its insured under the terms of a standard insurance policy can constitute a violation of General Business Law § 349." *Joannou v. Blue Ridge Ins. Co.*, 289 A.D.2d 531, 532, 735 N.Y.S.2d 786, 786 (2d Dep't 2001) (affirming the trial court's denial of insurance company's motion to dismiss plaintiff's GBL § 349 claim) (citing *Scavo v. Allstate Ins. Co.*, 238 A.D.2d 571, 657 N.Y.S.2d 193 (2d Dep't 1997); *see also Riordan v. Nationwide Mut. Fire Ins. Co.*, 756 F.

Supp. 732 (S.D.N.Y. 1990); *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 725 N.E.2d 598, 704 N.Y.S.2d 177 (1999) (finding that insurance company's acts were consumer-oriented where plaintiff alleged that insurer conducted an extensive marketing scheme to mislead policyholders into thinking their premiums under standard policy would diminish after a certain amount of time); *Wilner*, 71 A.D.3d at 167, 893 N.Y.S.2d at 218 (holding that plaintiff sufficiently alleged "broad impact on consumers at large" by showing that provision in policy that required the insured to protect the insurer's subrogation interest was contained in every Allstate homeowners' policy); *Acquista*, 285 A.D.2d 73, 730 N.Y.S.2d 272.

In *Riordan v. Nationwide Mutual Fire Insurance Co.*, 756 F. Supp. 732, 734-35 (S.D.N.Y. 1990), after a fire damaged the policyholders' home and its contents (including valuable antiques), they timely submitted a proof of loss to their insurance company, Nationwide, seeking coverage under their standard-form "Elite II" homeowners insurance policy, but Nationwide refused to pay the claim. Plaintiff brought suit alleging, *inter alia*, that Nationwide violated GBL § 349 by delaying plaintiffs' appraisal and refusing to make any offer on any portion of plaintiffs' claim (despite being provided with sufficient documentation of the loss), all in a purposeful attempt to frustrate settlement and coerce the policyholder into settling for less. *Id.* at 734-36, 738. Though Nationwide asserted that the coverage dispute was "inherently private," and thus, outside the gamut of GBL § 349, the court denied its motion to dismiss, stating that "plaintiffs expressly alleged the existence of a claim settlement policy designed to deceive certain categories of policyholders; in other words, the public at large." *Id.* at 739; *see Kurschner v. Mass. Cas. Ins. Co.*, No. 08-CV-0011, 2009 WL

537504, at *6 (E.D.N.Y. Mar. 3, 2009) (stating that plaintiff pled a plausible allegation of consumer-oriented conduct by alleging that insurance company purported to administer disability benefits via a standard-form policy, but utilized employee incentive programs to deny claims and terminate benefits).

Just as in *Riordan*, here, Plaintiffs alleged that they are individual consumers, and Liberty, from a disparate bargaining position, sold Plaintiffs the standard-form homeowners Policy which was designed and intended by Liberty to be purchased by the public at large in the State of New York. Compl. ¶¶ 52-55. The forms making up the Policy itself are offered and available to the general consuming public, and are regularly used by Defendant to induce consumers to purchase homeowners insurance coverage from Liberty. Compl. ¶ 54. Accordingly, every single consumer who purchases this same standard-form policy may be harmed as a result of Liberty's pattern and practice of avoiding or delaying the settlement of a legitimate claim when confronted with a significant fire loss, such as Plaintiffs' here. Compl. ¶¶ 56-57. Indeed, Plaintiffs' allegations that Liberty knowingly misrepresents the coverage it will provide under the Policy and turns a blind eye to evidence showing the legitimacy of Plaintiffs' claim "go to the very essence of the services [Liberty] provides to the public on a grand scale, as well as its obligation to deal with the public in good faith." Compl. ¶¶ 13, 16, 49, 51, 56-59; *Riordan*, 756 F. Supp. at 739.

Liberty relies heavily on the Court of Appeals' decision in *New York University v. Continental Insurance Co.* to mischaracterize Plaintiffs' GBL § 349 claim as a private contract dispute unique to the parties. However, in *New York University*, the coverage dispute at issue did not constitute consumer-oriented conduct because the

policyholder was "a major university acting through its director of insurance, [and] ...
[t]he policy was not a standard policy ... but was tailored to meet the purchaser's wishes
and requirements." 87 N.Y.3d at 321, 662 N.E.2d at 770, 639 N.Y.S.2d at 290.
Considering the bargaining positions of the parties and the customized insurance policy
at issue in the case, the coverage dispute in *New York University* could *only* apply those
specific contracting parties, and not the public at large. *Id.*; *Runge v. Erie Ins. Grp.*, No.
09CV792A, 2010 WL 5860401, at *5 (W.D.N.Y. May 24, 2010) (explaining that the
conduct at *New York University* could not affect the greater public because it involved a
non-standard insurance policy).

In fact, the *New York University* Court explicitly contemplated a viable
GBL § 349 claim where the company supplied standard forms to the general public, like
the one at issue here, and where the parties occupied disparate bargaining positions.
87 N.Y.2d at 321, 662 N.E.2d at 770-71, 639 N.Y.S.2d at 290-91 (citing *Oswego* to
distinguish between standard forms and personalized insurance policies). As described
above, this case concerns a standard-issue policy, sold to individual consumers
throughout New York State, and therefore, Liberty's bad faith denial of coverage for
Plaintiffs' valid claim has the potential to affect all other similarly-situated homeowners
who have purchased the same exact insurance policy that Liberty has marketed to the
general public. *Acquista*, 285 A.D.2d at 83, 730 N.Y.S.2d at 279.

Liberty claims its denial of coverage was based on the "unique
circumstances" of how Plaintiffs' fire loss occurred and the outcome of its purported
"investigation," and thus, its conduct toward Plaintiffs cannot form the basis of a GBL §
349 claim. Liberty MOL at 9-10. First, Liberty's contention goes to the merits of the

claim and improperly ignores the contrary allegations in Plaintiffs' Complaint, which must be accepted as true in determining a motion to dismiss. *Chambers*, 282 F.3d at 152. Additionally, Liberty misunderstands the "consumer-oriented" requirement of GBL § 349. Contrary to Liberty's contention, the specific underlying facts of a claim denial do not dictate whether the insurer's misconduct under a standard-form policy, available to the general public, can affect the public at large. *See, e.g., Riordan*, 756 F. Supp. at 736 (holding that insurer's conduct was sufficiently consumer-oriented even though its agent testified that "under an identical policy of insurance, differing circumstances might cause [the insurer] to approach claim settlement of insureds differently."); *Shebar v. Metro. Life Ins. Co.*, 25 A.D.3d 858, 859, 807 N.Y.S.2d 448 (3d Dep't 2006) (finding plaintiff's allegations of insurer's specific misrepresentation of coverage under standard-form policy were "not limited to a challenge regarding coverage made on the basis of facts unique to this insured plaintiff, but relate[d] to consumer-oriented conduct affecting the public at large").

For example, in *Acquista*, the insurance company denied plaintiff's application for benefits under his three disability policies, claiming that statements made in (1) an unrelated deposition of plaintiff, (2) plaintiff's "Confirmation of the Interview" form, and (3) a letter from plaintiff's counsel, all evidenced that this specific plaintiff was not "totally disabled." 285 A.D.2d at 75-76, 730 N.Y.S.2d at 274. While plaintiff could not yet determine, pre-discovery, whether the same practice of denying disability claims was aimed at other policyholders, the court still denied the insurer's motion to dismiss because "[t]he allegation that the insurer makes a practice of inordinately delaying and

then denying a claim without reference to its validity, may be said to fall within the parameters" of a deceptive practice under GBL § 349. *Id.* at 82, 730 N.Y.S. 2d at 279.

Admittedly, the names, dates, times, places, and even underlying facts will necessarily differ for each Liberty policyholder thwarted and discouraged from pursuing their legitimate claims under their insurance policies. Compl. ¶ 58. Yet, Liberty may still be guilty of regularly and routinely engaging in a practice of "fail[ing] to live up to the promises to provide insurance coverage" and "avoiding or inordinately delaying the settlement of [a] claim" when presented with a homeowner's significant claim made under their standard-form, widely disseminated policy. Compl. ¶¶ 21-22.

Finally, although there is no private action for violations of Insurance Law § 2601 and 11 N.Y.C.R.R. § 216, it is well-established that allegations of such violations can form the basis of a viable GBL § 349 claim. *See, e.g., Riordan,* 756 F. Supp. at 739; *Consol. Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Trust,* No. 1:06-CV-871, 2007 WL 951565, at *8 (N.D.N.Y. Mar. 27, 2007) ("In the insurance industry, [GBL § 349] has been used against an insurer's claim settlement practices and policies designed to deceive policyholders in violation of New York Insurance Law.").

In sum, Plaintiffs have sufficiently stated a claim for relief under GBL § 349. As such, Liberty's motion should be denied and Plaintiffs' should be entitled to discovery from Liberty in order to prove their claim. *See Wilner,* 71 A.D.3d at 158-59, 893 N.Y.S.2d at 211-12.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss Plaintiffs' third and fourth causes of action, and grant any such further relief as it deems just and proper.

Dated:    May 2, 2011

Finley T. Harckham, Esq. (#512551)
Dennis J. Artese, Esq. (#515679)
Marc T. Ladd, Esq. (#516851)

ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY 10020
(212) 278-1000

Attorneys for Plaintiffs,
Mark R. Laskowski and Richard Hall

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MARK R. LASKOWSKI and RICHARD HALL,

                  Plaintiffs,

        - against -

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

                  Defendant.

Civil Action No.
5:11-cv-340 (GLS/ATB)

## CERTIFICATE OF SERVICE

        I, Donald Flynn, hereby certify that on May 2, 2011, I electronically filed the foregoing Opposition to Defendant's Motion to Dismiss in the above action, with the Clerk of the United States District Court for the Northern District of New York, using the CM/ECF system which sent notification of such filing to the following:

Thomas J. O'Connor, Esq.
Hiscock & Barclay LLP
*Attorneys for Defendant*
50 Beaver Street, Fifth Floor
Albany, NY 12207-2830

                    _____
                           Donald Flynn