# ANDERSON KILL & OLICK, P.C.

Attorneys and Counselors at Law

1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020
TELEPHONE: 212-278-1000 ■ FAX: 212-278-1733
www.andersonkill.com

Dennis J. Artese, Esq.
dartese@andersonkill.com
(212) 278-1246

*By Electronic Filing*

June 20, 2011

Hon. Andrew T. Baxter
United States Magistrate Judge
U.S. District Courthouse
100 S. Clinton Street
P.O. Box 7367
Syracuse, NY 13261-7367

    Re:   *Laskowski, et al. v. Liberty Mutual Fire Insurance Company*, Case No. 5:11-cv-340 (GLS/ATB)

Dear Judge Baxter:

Plaintiffs Mark R. Laskowski and Richard Hall (collectively, "Plaintiffs") respectfully submit this letter brief in response to defendant Liberty Mutual Fire Insurance Company's ("Liberty's") June 13, 2011 letter brief opposing Plaintiffs' requests for the discovery of "prior claims data and marketing materials."[1]

## I. Plaintiffs Have Stated A Valid Claim Under GBL § 349 And, Therefore, Are Entitled To Discovery Related To Liberty's Deceptive Conduct Toward Its Other Policyholders, Including Production Of Their Claims Files

Plaintiffs have sufficiently plead that Liberty violated GBL § 349 by engaging in a pattern and practice of delaying and avoiding payment under its LibertyGuard Deluxe Homeowners Policy No. H32-221-361798-900 3 (the "Policy"), and, under New York law, Plaintiffs are entitled to discovery regarding other similarly-treated policyholders. In *Wilner v. Allstate Insurance Co.*, 71 A.D.3d 155, 157, 893 N.Y.S.2d 208, 211 (2d Dep't 2010), plaintiff was denied coverage for storm damage to his home, and he sued Allstate alleging, *inter alia*, that Allstate had violated GBL § 349 by including a provision in his standard-form homeowners policy which required him to commence a lawsuit against other third parties to protect Allstate's subrogation interest. Allstate asserted that plaintiff's interpretation was not reasonable and moved to dismiss the claim, but the Second Department affirmed the lower court's decision, and held that plaintiff sufficiently alleged that possible harm could result to similarly-situated Allstate policyholders. *Id.* at 164, 893 N.Y.S.2d at 216.

---

[1] Liberty's letter brief fails to identify which of Plaintiffs' interrogatories or document requests Liberty is objecting to, significantly prejudicing Plaintiffs' ability to respond fully to Liberty's letter brief as well as this Court's ability to address the issues Liberty presents.

NYDOCS1-969836.2

New York, NY ■ Newark, NJ ■ Philadelphia, PA ■ Ventura, CA ■ Washington, DC ■ Stamford, CT

However, before the lower court determined that plaintiff had sufficiently alleged a claim under GBL § 349, it ordered that Allstate produce *in camera* all documents concerning all property damage claims under that policy for damages resulting from the storm, as well as all claims that resulted in litigation in Nassau County from October, 2005 to January, 2007. *Id.* at 159, 893 N.Y.S.2d at 212. Allstate claimed that order was improper and too onerous, but plaintiff claimed such discovery was necessary to establish his claim under GBL § 349 that Allstate engaged in a pattern and practice of delaying settlement in order to force claimants to litigate their claims to prevent a forfeiture of coverage. *Id.* at 158-59, 168, 893 N.Y.S.2d at 212, 219. The Second Department agreed with plaintiff, and the earlier decision, that Allstate must produce documents relating to 375 claims made in connection with the 2005 storm, stating:

> The information sought, regarding claims the defendant has handled for other insureds, relates to the plaintiffs' attempt to establish that the defendant has engaged in a pattern of deception, and, thus, the request is proper. *Id.* at 168, 893 N.Y.S.2d at 219.

Indeed, New York courts frequently order insurance companies to produce discovery of information concerning other policyholders when the information is relevant to plaintiff's GBL § 349 claim, including requests more expansive than Plaintiffs' requests here. In *Gillen v. Utica Mutual Insurance Co.*, 41 A.D.3d 647, 647, 839 N.Y.S.2d 155, 156-57 (2d Dep't 2007), plaintiff alleged that defendant had a deceptive practice of misrepresenting the coverage terms of its policy, in violation of GBL § 349, and propounded the following interrogatories:

> Identify and Describe every complaint made to a governmental agency about [defendant] or in a judicial proceeding or arbitration against [defendant] in the last five years in which the complainant was an insured under a policy of casualty insurance who complained of [defendant's] refusal or failure to make payment that was required under a policy of insurance; and
>
> Identify each and every policyholder whose claim [was] rejected in the last five years on the ground that a roof, ceiling or floor collapse or partial collapse where the fractured support members is the result of "cracking" or "settling."

*Respondent-Appellant's Brief*, 2006 WL 4844812, at *2; *Defendant-Appellant-Cross-Respondent's Brief*, 2006 WL 4844811, at *7, 11. The appellate court affirmed the lower court's decision in denying defendant's motion for protective order regarding such interrogatories, as they were relevant to plaintiff's GBL § 349 claim. *Gillen*, 41 A.D.3d at 647, 839 N.Y.S.2d at 157-58.

Here, Plaintiffs are requesting that Liberty merely identify any fire loss claims in New York it has denied in the last seven years, and to produce any documents relating

NYDOCS1-969836.2

to such denials. Plaintiffs' First Interrogatories, ¶ 12; Plaintiffs' First Document Requests, ¶ 17. Plaintiffs' requests already are limited in (1) type of loss; (2) coverage decision; (3) geography; and (4) time period. Indeed, Plaintiffs' document request would include the claims files of other Liberty policyholders, but such a request is regularly granted in New York, as described above, and in other jurisdictions. *See, e.g., Cummins, Inc. v. ACE Am. Ins. Co.*, No. 1:09-cv-00738, 2011 WL 130158, at *10 (S.D. Ind. Jan. 14, 2011) (ordering thirteen defendant insurance companies to identify and produce twenty claims files each where the claim was in excess of $1 million for flood loss for the last ten years). In fact, Liberty previously has been ordered to produce claims files of its other policyholders when such files are relevant to the plaintiff's claims. *See Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, No. 89-1701, 1990 WL 191922, at *2-3 (D.N.J. Nov. 13, 1990) (affirming Magistrate's order compelling Liberty to produce claims files concerning environmental pollution claims of other insureds since files were relevant to Liberty's handling of plaintiff's claim under identical policy language).

Liberty fails to cite to any authority for the proposition that production of documents relating to other policyholders' claims is improper, especially when information contained in such claims files relates to plaintiff's claim, as it does here. Liberty also does <u>not</u> contend that responding to Plaintiffs' requests would be unduly burdensome or onerous. Instead, Liberty argues the merits of Plaintiffs' "speculative" GBL § 349 claim as a reason for a protective order, stating, "District Courts in New York have refused to permit discovery in GBL § 349 cases when the Plaintiff alleges nothing more than mere conclusions in the Complaint." Liberty Ltr. Brief, at 2. For support, Liberty cites to *Kaufman v. Sirius XM Radio, Inc.*, 751 F. Supp. 2d 681 (S.D.N.Y. 2010), and *Excel Elecs. & Photo Corp. v. Aetna Cas. and Sur. Co.*, No. 90 cv. 6508, 1991 WL 259257 (S.D.N.Y. Nov. 27, 1991). However, in those cases, there was a <u>judicial determination</u> that the respective plaintiffs had failed to provide anything more than conclusory allegations of defendant's deceptive conduct. *Id.* at 687; *Excel Elecs.*, 1991 WL 259257 at *7. Naturally, the plaintiffs were not allowed to abuse the discovery process in an effort to prove up their deficient GBL § 349 claims.

Here, Liberty is seeking a protective order; this is not a motion to dismiss. Liberty already moved to dismiss Plaintiffs' GBL § 349 claim, and that motion is currently pending before Judge Sharpe. Notwithstanding, Liberty takes the position here that a protective order is warranted based on all the same reasons it argued to Judge Sharpe that Plaintiffs' GBL § 349 claim should be dismissed. Given the obvious risk of inconsistent orders, it would be improper for Your Honor to grant a protective order based on the very same arguments that are pending before Judge Sharpe to decide. Since there has been no judicial determination that Plaintiffs have failed to state a claim under GBL § 349, and because Liberty offers <u>no</u> other basis for its requested relief, Liberty's application should be denied.

Additionally, Liberty's contention that Plaintiffs are on a "fishing expedition" is wholly unsupported. Plaintiffs' pre-discovery research has yielded evidence of several

**Anderson Kill & Olick, P.C.**

Hon. Andrew T. Baxter
June 20, 2011
Page 4

past instances of Liberty's bad faith conduct towards its policyholders in its claims handling, coverage positions and investigations,[2] including specifically its practice of delaying settlement by improvidently charging its insureds with arson when confronted with a significant fire loss claim. See, e.g., Tuner v. Liberty Mut. Fire Ins. Co., No. 4:07-CV-163, 2007 WL 2428035, at *7-8 (N.D. Ohio Aug. 21, 2007) (denying Liberty's motion for summary judgment, holding a jury could reasonably find that Liberty's denial of plaintiff's fire loss based on arson was in bad faith since Liberty disregarded reports of fire marshal and other investigators that cause of fire was indeterminable); Styles v. Liberty Mut. Fire Ins. Co., No. 7:06CV00311, 2006 WL 1890104, at *3-4 (W.D. Va. July 7, 2006) (allowing plaintiff's claim for attorneys fees and costs based on allegations that Liberty acted in bad faith in its interactions with fire officials and its delay in reaching a coverage position on fire loss); Montalto v. Liberty Mut. Ins. Co., No. 94-4942 (Mass. Super. Ct. Aug. 26, 1998) (finding Liberty acted in bad faith by maintaining that insured committed arson despite evidence to the contrary and awarding treble damages against Liberty). Given these instances of past conduct, it is no wonder why Liberty is fighting so hard to conceal its claims files.

In short, Plaintiffs have sufficiently plead that Liberty has engaged in a pattern and practice of avoiding or delaying settlement and turning a blind eye to evidence showing the legitimacy of its policyholder's fire loss claim, and the Court has not determined that Plaintiffs' GBL § 349 claim is lacking. As such, Plaintiffs' should be allowed to conduct discovery related to their claim. See Acquista v. New York Life Ins. Co., 285 A.D.2d 73, 82, 730 N.YS.2d 272, 279 (1st Dep't 2001) (denying defendant's motion to dismiss plaintiff's GBL § 349 claim even though plaintiff could not yet determine, pre-discovery, whether the same practice of delaying and then denying viable disability claims was aimed at other policyholders). Once Plaintiffs are allowed to conduct discovery of Liberty's conduct towards its other policyholders, information that is solely within the possession of Liberty, they will be in a position to prove their claim that Liberty engages in a practice of avoiding payment for significant fire loss claims. See Medina v. State Farm Mut. Auto. Ins. Co., 303 A.D.2d 987, 989, 757 N.Y.S.2d 178, 180 (4th Dep't 2003) (reinstating plaintiff's claims for breach of good faith and fair dealing and violation GBL § 349 because both claims rested on defendant insurance company's practices and procedures, and facts relevant to those claims were in sole possession and control of defendant, and thus, further discovery was warranted). Accordingly, Liberty's request for a protective order regarding disclosure of its claims data for other policyholders should be denied.

---

[2]  See, e.g., Zizzo v. Liberty Mut. Ins. Co., 188 Misc. 2d 293 (2d Dep't 2001); Khalimsky v. Liberty Mut. Fire Ins. Co., No. 07-8959, 2009 WL 982641 (E.D. La. Apr. 13, 2009); Rawe v. Liberty Mut. Fire Ins. Co., 462 F.3d 521 (6th Cir. 2006); Hartz v. Liberty Mut. Ins. Co., 269 F.3d 474 (4th Cir. 2001); Casey v. Liberty Mut. Ins. Co., No. CA 912316, 1995 WL 808673 (Mass. Super. Ct. Apr. 27, 1995); and Chemstar, Inc. v. Liberty Mut. Ins. Co., 42 F.3d 1398 (9th Cir. 1994).

### II. Liberty's Marketing Materials, Brochures, Pamphlets, And Informational Literature Are Relevant To Plaintiffs' Bad Faith And GBL § 349 Claims

In the same broad stroke that Liberty asserts Plaintiffs are not entitled to its "claims data," it also states that Plaintiffs' "speculative" GBL § 349 claim forecloses production of any of Liberty's marketing materials because such materials "ha[ve] no bearing on whether there was a <u>breach of contract</u> when the Plaintiffs' claim was denied." Liberty Ltr. Brief, at 4 (emphasis added). Liberty's argument completely ignores that such materials are relevant to Plaintiffs' claims against Liberty for breach of the covenant of good faith and fair dealing and for violation of GBL § 349, and that there has been no judicial determination that such claims have not been properly stated. First, the existence and extent of Liberty's marketing materials concerning the Policy are relevant to Plaintiffs' claim that Liberty's actions in delaying and avoiding payment for fire losses under the Policy has broader impact on consumers at large, and thus, is "consumer oriented" under GBL § 349. Compl. ¶¶ 54, 58; *see Wilner*, 71 A.D.3d at 163, 893 N.Y.S.2d at 215 (stating that courts will permit a cause of action pursuant to GBL § 349 where defendant's deceptive practice of misrepresenting coverage afforded under the policy involves a "an extensive marketing scheme that had a 'broader impact on consumers at large.'").

Second, evidence of Liberty's marketing materials, brochures, pamphlets, and informational literature regarding the Policy is directly relevant to Plaintiffs' claims that Liberty ignored substantial exculpatory evidence when "investigating" Plaintiffs' claim, and misrepresents policy provisions and knowingly misleads the public into purchasing homeowner's policies when Liberty does not intend pay its policyholders for significant fire loss claims or even properly investigate them. Compl. ¶¶ 49, 51, 56-58. Plaintiffs intend to show that Liberty advertised to the general public that it would honor its obligations under the Policy, fully investigate its policyholders' claims, handle claims with professionalism and in the best interests of its policyholders, and yet, systematically fails to carry out these obligations. *See Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 342, 704 N.Y.S.2d 177, 725 N.E.2d 598 (1999) (alleging defendants marketed policies by giving assurances that, after a certain amount of time, they would not longer have to pay premiums); *Skibinsky v. State Farm Fire and Cas. Co.*, 6 A.D.3d 975, 976, 775 N.Y.S.2d 200, 201 (3d Dep't 2004) (alleging defendants misrepresented to public generally nature of coverage under homeowner's policy). Thus, Plaintiffs are entitled to discovery of Liberty's marketing materials, brochures, pamphlets, and informational literature as these materials are relevant to their claims.

Respectfully submitted,

/s/ Dennis J. Artese

Dennis J. Artese

cc: Thomas J. O'Connor, Esq. (by e-filing)