UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MARK R. LASKOWSKI and RICHARD HALL,

                          Plaintiffs,

           v.                                              Civil Action No. 5:11-CV-340 (GLS/ATB)

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

                          Defendant.

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY  10020
Telephone:  212-278-1000

Finley T. Harckham, Esq.
Dennis J. Artese, Esq.

Attorneys for Plaintiffs
Mark R. Laskowski and Richard Hall

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

SUMMARY OF ARGUMENT ...............................................................................1

COUNTER-STATEMENT OF FACTS.................................................................2

ARGUMENT ..........................................................................................................5

I.      SUMMARY JUDGMENT STANDARD ...................................................5

II.     PLAINTIFFS COMPLIED WITH THE COOPERATION CLAUSE OF THE POLICY AS A MATTER OF LAW ...................................................5

III.    JUDICIAL ESTOPPEL HAS NO APPLICATION HERE .......................................15

CONCLUSION.....................................................................................................20

nydocs1-986812.4

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ....................................................................................5

*Avarello v. State Farm Fire & Cas. Co.,*
  208 A.D.2d 483, 616 N.Y.S.2d 796 (2d Dep't 1994)...............................6, 7

*Averbuch v. Home Ins. Co.,*
  114 A.D.2d 827, 494 N.Y.S.2d 738 (2d Dep't 1985)...................................11

*Ayuob v. American Guar. and Liab. Ins. Co.,*
  605 F. Supp. 713 (S.D.N.Y. 1985).............................................................11

*Blinco v. Preferred Mut. Ins. Co.,*
  11 A.D.3d 924, 782 N.Y.S.2d 483 (4th Dep't 2004)..........................7, 8, 10

*Chevron Corp. v. Salazar,*
  807 F. Supp. 2d 189 (S.D.N.Y. 2011).....................................15-16, 17, 18

*Cooper v. New York Cent. Mut. Fire Ins. Co.,*
  72 A.D.3d 1556, 900 N.Y.S.2d 545 (4th Dep't 2010)...................................8

*Cronin v. Aetna Life Ins. Co.,*
  46 F.3d 196 (2d Cir. 1995) ..........................................................................5

*Dyno-Bite, Inc. v. Travelers Cos.,*
  80 A.D.2d 471, 439 N.Y.S.2d 558 (4th Dep't 1981)...................................11

*Erie Ins. Co. v. JMM Properties, LLC,*
  66 A.D.3d 1282, 888 N.Y.S.2d 642 (3d Dep't 2009)...................6, 8, 10, 15

*Ingarra v. General Accident/PG Ins. Co. of New York,*
  273 A.D.2d 766, 710 N.Y.S.2d 168 (3d Dep't 2000).........................6, 7, 10

*Mistretta v. Hartford Accident and Indem. Co.,*
  275 A.D.2d 356, 712 N.Y.S.2d 167 (2d Dep't 2000)...................................15

*Mitchell v. Washingtonville Cent. School Dist.,*
  190 F.3d 1 (2d Cir. 1999) ......................................................................16, 17

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of America
  Securities, LLC,*
  716 F. Supp. 2d 236 (S.D.N.Y. 2010)...................................................16, 17

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Richie's Corner, Inc. v. National Specialty Ins. Co.*,
  598 F. Supp. 2d 274 (E.D.N.Y. 2008).......................................................................11

*Rosenthal v. Prudential Prop. & Cas. Co.*,
  928 F.2d 493 (2d Cir. 1991) ............................................................................11, 12

*Somerstein Caterers of Lawrence, Inc. v. Ins. Co. of State of Pa.*,
  262 A.D.2d 252, 692 N.Y.S.2d 369 (1st Dep't 1999)................................................13

*Somerstein Caterers of Lawrence, Inc. v. Ins. Co. of State of Pa.*,
  Index No. 12166/96 (Sup. Ct. New York City Oct. 30, 1998)........................12, 13, 14

*Stradford v. Zurich Ins. Co.*,
  02 Civ. 3628 (NRB), 2002 U.S. Dist. LEXIS 24050 (S.D.N.Y. Dec. 10, 2002)..........12

*In re Trace Int'l Holdings, Inc.*,
  No. 04 Civ. 1295 (KMW), 2009 WL 1810112 (S.D.N.Y. June 25, 2009) ............15, 16

*Turkow v. Erie Ins. Co.*,
  20 A.D.3d 649, 798 N.Y.S.2d 768 (3d Dep't 2005)................................................7, 8

*U.S. Fid. & Guar. Co. v. Treadwell Corp.*,
  58 F. Supp. 2d 77 (S.D.N.Y. 1999).........................................................................17

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) ......................................................................................................5

Fed. R. Civ. P. 56(f)(1)..........................................................................................14, 20

nydocs1-986812.4

## INTRODUCTION

Plaintiffs Mark R. Laskowski ("Laskowski") and Richard Hall ("Hall") (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in Opposition to the Motion for Summary Judgment (the "Motion") by defendant Liberty Mutual Fire Insurance Company ("Liberty" or "Defendant"). This action arises out of the failure and refusal of Liberty to honor its obligations under a standard form homeowner's fire insurance policy (the "Policy") to pay Plaintiffs for property damage and other covered losses they suffered as a result of a fire that occurred on January 10, 2010. Liberty has moved for summary judgment on the basis that Plaintiffs failed to comply with a condition of the Policy requiring their appearance at examinations under oath. Liberty also seeks a determination that Plaintiffs are judicially estopped from recovering more than 50% of proven personal property losses. For the reasons set forth below, Liberty's Motion should be denied.

## SUMMARY OF ARGUMENT

Liberty has failed to establish as a matter of law that Plaintiffs breached their obligation under the Policy to submit to examinations under oath ("EUOs") as often as reasonably required, by not appearing for a second round of EUOs on the same subject matters for which they were thoroughly examined for two full days. The record clearly reflects the immediate and extensive cooperation of the Plaintiffs by submitting to two days of examinations under oath. At all times, Plaintiffs remained willing to submit to further examinations on matters not addressed in the initial examinations. Based on the record before the Court, Plaintiffs fully complied with their obligations under the cooperation clause of the Policy as a matter of law, and thus summary judgment should be granted to them, striking Liberty's defense of failure to cooperate.

Alternatively, at a bare minimum, Liberty's Motion should be denied as issues of fact preclude summary judgment in Liberty's favor.

Additionally, judicial estoppel has no application here. Hall's prior statements on which Liberty relies in its Motion are completely consistent with Plaintiffs' position that Laskowski owned the personal property at issue in this litigation at the time of the subject fire. Moreover, Hall's statements in a prior judicial proceeding to which Laskowski was not a party cannot be imputed to Laskowski. Finally, Liberty cannot estop Laskowski's claim for personal property damages because it would result in an unfair advantage to Liberty. As such, Liberty's motion for summary judgment should be denied.

## COUNTER-STATEMENT OF FACTS

Plaintiffs own a residence located at 5758 Mill Street, Eaton, New York 13334 (the "Property"). Laskowski Decl. ¶ 2; Liberty SOF ¶¶ 1, 2. On January 10, 2010, a fire caused damage to the residence and its contents, including valuable antiques, all of which are insured by Liberty under the Policy. Liberty SOF ¶¶ 1, 3; Laskowski Decl. ¶ 3.   Plaintiffs promptly notified Liberty of the fire damage and submitted a claim under the Policy for damage to the Property and contents and for all other benefits due to them under the Policy. Liberty SOF at ¶¶ 4-5.

At the time of the fire, Laskowski owned the personal property claimed in this lawsuit. Laskowski Decl. ¶ 4; O'Connor Aff. Ex. C at 147:12-148:14. Laskowski seeks $599,791.89 for the cost to replace antiques damaged in the fire and $148,013.93 for the cost to replace contents damaged in the fire. Laskowski Decl. ¶ 4; Artese Decl. Ex. 1.

On April 16, 2010, Liberty first demanded that Plaintiffs submit to examinations under oath ("EUOs"). Liberty SOF at ¶ 8; O'Connor Aff., Ex. H. Plaintiffs submitted to two full days of EUOs on May 18, 2010 and May 19, 2010. *See* Liberty SOF ¶¶ 8, 10-12; O'Connor Aff. Exs. I-L. Liberty's counsel, with a Liberty representative present, determined the extent of the questioning Liberty chose to conduct on those days. *See generally* O'Connor Aff. Exs. I-L; O'Connor Aff. Ex. T. Neither Plaintiffs nor their counsel decided or requested to end the examinations on either day of testimony. *See generally* O'Connor Aff. Exs. I-L; O'Connor Aff. Ex. T.

Further, throughout Liberty's investigation of Plaintiffs' insurance claim, Plaintiffs allowed Liberty representatives (of which there were many) unfettered access to inspect and investigate their fire-damaged home and its contents on numerous occasions. Laskowski Decl. ¶ 5. Similarly, Plaintiffs promptly provided Liberty with the equivalent of approximately three to four bankers boxes of original documents, along with numerous photo albums depicting their home and its contents, all of which Liberty had requested. Laskowski Decl. ¶ 6. Liberty reviewed and inventoried the documents and photographs, made copies of those it wished to keep, and returned the original documents to Plaintiffs. Artese Decl. ¶ 2. After the initial document production, Plaintiffs diligently worked with Liberty to further locate and provide documents, explain the unavailability of certain documents, or assure Liberty that Plaintiffs would continue to search for and obtain the requested documents. *See* Liberty SOF ¶ 19; O'Connor Aff., Ex. N.

Despite Plaintiffs' prompt submission to two full days of EUOs, on July 15, 2010, Liberty demanded that Plaintiffs submit to additional EUOs. *See* Liberty SOF ¶

nydocs1-986812.4

18; O'Connor Aff., Ex. M.  However, because Plaintiffs were obligated to submit only to reasonable requests for EUOs, and Plaintiffs "were [already] put through lengthy and thorough EUOs, during which their history with the subject property, their finances, the layout and contents of the subject home, and the events of the morning of the fire were fully explored," Plaintiffs requested that Liberty provide a description of the subject matters that would be addressed in the additional EUOs so that Plaintiffs could assess the reasonableness of Liberty's demand.  O'Connor Aff., Ex. N ("Please let us know what other subject areas Liberty Mutual feels are necessary to explore so that we may further consider whether Liberty Mutual's request for further EUOs is reasonable.").

Plaintiffs again sought further information about the proposed EUOs in September 2010, stating "we do not believe further EUOs are reasonable given the length and comprehensiveness of Liberty's prior examinations.  Please explain why you think further examinations are reasonable and necessary."  O'Connor Aff., Ex. P.  After ignoring Plaintiffs' requests for suggested subject matters for almost two months, Liberty finally responded, identifying the very same subjects about which the Plaintiffs were previously questioned over two days, with a single exception pertaining to submitted proofs of loss.  O'Connor Aff., Ex. Q; see also O'Connor Aff., Exs. O, P, & R.

In November 2010, Plaintiffs reiterated their view that "the Insureds have complied fully with their duty of cooperation with respect to being examined on the previously covered topics," but nevertheless offered to submit to "further EUOs on subject matters not previously covered, including the proofs of loss."  O'Connor Aff., Ex. R.  In fact, Plaintiffs acknowledged their general availability for the continued EUOs during the month of December 2010 and requested convenient dates for Liberty and its

- 4 -

counsel for examining "the Insureds ... with respect to the proofs of loss or other previously not covered topics." O'Connor Aff., Ex. R.  Instead of conducting the further EUOs as offered by Plaintiffs, Liberty denied Plaintiffs' claim on January 11, 2011, a full year after the fire. *See* O'Connor Aff., Exs. R & T; Liberty SOF ¶ 46; Bissonette Decl., Ex. 2.  Plaintiffs filed the instant action on February 16, 2011, seeking coverage for the damage to their home, its contents and other covered losses stemming from the fire. Liberty SOF ¶ 51; O'Connor Aff., Ex. A.

## ARGUMENT

### I.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) permits a court to "grant summary judgment if the movant shows that there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995).  The court must "draw all factual inferences in favor of the [non-movant]," and such inferences "must be viewed in the light of most favorable to the [non-movant]." *Id.* However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### II.   Plaintiffs Complied with the Cooperation Clause of the Policy As a Matter of Law

Liberty argues that it is entitled to summary judgment because Plaintiffs' refusal to submit to additional EUOs on topics about which Plaintiffs already had been extensively examined constituted a breach of the Policy's cooperation clause.  In

- 5 -

support of its allegation that Plaintiffs breached the cooperation clause of the Policy, Liberty relies solely on Plaintiffs' refusal to submit to additional, repetitive EUOs. Liberty has not claimed, because it cannot claim, that Plaintiffs failed in any other manner to cooperate with Liberty in its investigation, including with respect to the production of documents and granting of access to the damaged property. Liberty Motion, p. 1, 8-9.

Liberty's request for additional, repetitive EUOs was unreasonable and unnecessary as a matter of law. Therefore, Plaintiffs satisfied their obligation under the Policy to appear for all reasonably requested EUOs, and Liberty's Motion should be denied.

Cooperation clauses in fire insurance policies are meant "to enable the insurer to obtain all knowledge and facts concerning the cause of the fire and the loss involved while the information is fresh." *Erie Ins. Co. v. JMM Properties, LLC*, 66 A.D.3d 1282, 1284, 888 N.Y.S.2d 642, 644 (3d Dep't 2009) (quoting *Weissberg v. Royal Ins. Co.*, 240 A.D.2d 733, 733-34, 659 N.Y.S.2d 505, 506 (2d Dep't 1997)). "In order to [prevail] on its defense of non-cooperation, the defendant-insurance company [is] required to show, by a preponderance of the evidence, that the plaintiff-insured . . . engaged in an unreasonable and willful pattern of refusing to answer material and relevant questions or to supply material and relevant documents." *Avarello v. State Farm Fire & Cas. Co.*, 208 A.D.2d 483, 483, 616 N.Y.S.2d 796, 797 (2d Dep't 1994). "The insurer's burden of proving willfulness has been termed 'a heavy one' and requires a showing that the insured's attitude 'was one of willful and avowed obstruction' involving a 'pattern of noncooperation for which no reasonable excuse [is] offered.'" *Ingarra v. General Accident/PG Ins. Co. of New York*, 273 A.D.2d 766, 767, 710

- 6 -

nydocs1-986812.4

N.Y.S.2d 168, 170 (3d Dep't 2000) (citations omitted); *see also Blinco v. Preferred Mut. Ins. Co.*, 11 A.D.3d 924, 924, 782 N.Y.S.2d 483, 484 (4th Dep't 2004); *Turkow v. Erie Ins. Co.*, 20 A.D.3d 649, 651, 798 N.Y.S.2d 768, 770 (3d Dep't 2005).  Finally, "it should be noted that the duty of an insured under the cooperation clause of a fire insurance policy is satisfied by substantial compliance." *Avarello*, 208 A.D.2d at 483, 616 N.Y.S.2d at 797.

In *Ingarra v. General Accident/PG Ins. Co. of New York*, the policyholder permitted the insurance company to inspect the property on multiple occasions, submitted to an EUO, provided requested documents, "proffered what [the policyholder believed] were reasonable substitutes for discarded documents destroyed in the [loss at issue] and attempted to explain his position regarding those items he could not, or would not, produce." *Ingarra*, 273 A.D.2d at 768, 710 N.Y.S.2d at 171.  Despite these efforts of the policyholder to provide the insurance company with the information necessary to complete its investigation, the insurance company moved for summary judgment on the basis that the policyholder breached the cooperation clause of the insurance policy. *Id.* at 767, 710 N.Y.S.2d at 170.  Holding that the insurance company had the burden to prove "willful and avowed obstruction" and a "pattern of noncooperation," the Third Department upheld the supreme court's denial of summary judgment because the insurance company failed to meet that burden as a matter of law.

New York courts have refused to grant summary judgment in favor of insurance companies upon even lesser showings of cooperation than that in *Ingarra*.  In *Turkow v. Erie Insurance Company*, the court rejected the insurance company's allegation of willful violation of the cooperation clause where the policyholder "had at

least two telephone conversations with [the insurance company's] agents and permitted them to inspect the damaged premises on various occasions." *Turkow*, 20 A.D.3d at 651, 798 N.Y.S.2d at 770.  Moreover, the Fourth Department has refused to grant summary judgment for the insurance company where the policyholder makes a reasonable objection to the broad scope of the insurance company's requests or offers reasons for failing to provide all requested documents. *Blinco*, 11 A.D.3d at 924; 782 N.Y.S.2d at 485; *Cooper v. New York Cent. Mut. Fire Ins. Co.*, 72 A.D.3d 1556, 1557, 900 N.Y.S.2d 545, 547 (4th Dep't 2010).

In the instant matter, the Policy contains a standard cooperation clause that provides that after the Plaintiffs suffer a loss, they will submit to EUOs "[a]s often as [Liberty] reasonably require[s]."  Bissonnette Decl., Ex. 1 (emphasis added).  The purpose of the cooperation clause is to enable the insurance company to investigate facts related to the loss soon after the loss took place. *Erie*, 66 A.D.3d at 1284; 888 N.Y.S.2d at 644.  As discussed above, the record establishes Plaintiffs' full compliance with this provision through Plaintiffs' participation in lengthy EUOs and continued willingness to submit to further EUOs on subject matters for which they had not already been thoroughly examined.

Indeed, Plaintiffs submitted to two full days of EUOs on May 18, 2010 and May 19, 2010, promptly after Liberty's first demand for such examinations. *See* Liberty SOF ¶¶ 8, 10; O'Connor Aff., Exs. I-L.  Liberty's counsel, with a Liberty representative present, determined the extent of the questioning Liberty chose to conduct those days. *See generally* O'Connor Aff. Exs. I-L; O'Connor Aff. Ex. T.  Neither Plaintiffs nor their

- 8 -

counsel decided or requested to end the examinations on either day of testimony. *See generally* O'Connor Aff. Exs. I-L; O'Connor Aff. Ex. T.

On July 15, 2010, Liberty demanded that Plaintiffs submit to additional EUOs. *See* Liberty SOF ¶ 18; O'Connor Aff., Ex. M. However, because Plaintiffs were required to submit only to reasonable requests for EUOs, and "were [already] put through lengthy and thorough EUOs, during which their history with the subject property, their finances, the layout and contents of the subject home, and the events of the morning of the fire were fully explored," Plaintiffs requested that Liberty provide a description of the subject matters that would be addressed in the additional EUOs in order to assess the reasonableness of Liberty's demand. *See* O'Connor Aff., Ex. N.

After ignoring Plaintiffs' requests for suggested subject matters for almost two months, Liberty finally responded, identifying the very same subjects about which the Plaintiffs were previously questioned over two days, with a single exception pertaining to submitted proofs of loss. *See* O'Connor Aff., Exs. O, P, Q, & R. Plaintiffs repeatedly reiterated their willingness to participate in EUOs on subject matters not previously examined, but Liberty neglected to take advantage of that opportunity, opting instead simply to deny Plaintiffs' claim. *See* O'Connor Aff., Exs. R & T; Liberty SOF ¶ 46; Bissonette Decl., Ex. 2.

Far from Liberty's vague contention that Plaintiffs made a "hollow offer of compliance," Plaintiffs' offer would ensure that Liberty was able to fully question Plaintiffs on all subject matters relevant to the lawsuit. Combined with Liberty's thorough examination of Plaintiffs at their initial EUOs, Plaintiffs' offer of further EUOs on previously undiscovered topics would have provided Liberty with ample opportunity

nydocs1-986812.4

to investigate all facts concerning the loss soon after the loss occurred. *Erie*, 66 A.D.3d at 1284, 888 N.Y.S.2d at 644.[1]

Despite Plaintiffs' immediate and continuous compliance with Liberty's requests, Liberty now alleges that Plaintiffs breached the cooperation clause in the Policy solely on the basis of Plaintiffs' refusal to submit to additional, repetitive EUOs. As the record makes clear, Plaintiffs cooperated extensively.  In fact, Plaintiffs' cooperation in Liberty's investigation is almost identical to that of the policyholder in *Ingarra*, where the Third Department refused to hold as a matter of law that the policyholder willfully violated the cooperation clause in breach of the contract. *Ingarra*, 273 A.D.2d at 768, 710 N.Y.S.2d at 171 ("The record reveals that [the policyholder] submitted to an examination under oath, supplied documents and records, proffered what he believed were reasonable substitutes for discarded documents destroyed in the January 1997 incident and attempted to explain his position regarding those items he could not, or would not, produce.").  Thus, Plaintiffs' reasonable objections to additional, repetitive EUOs do not "establish the requisite willful noncooperation." *Blinco*, 11 A.D.3d at 924, 782 N.Y.S.2d at 485 (holding that the insurance company did not meet its willfulness burden by showing that the policyholder objected to the broad scope of the insurance company's requests); *see also Ingarra*, 273 A.D.2d at 767, 710 N.Y.S.2d at 170.

---

[1]     Plaintiffs could not (and cannot) conceive of any basis for Liberty's wanting to question Plaintiffs again on topics that Liberty already had thoroughly covered with Plaintiffs, other than Liberty's desire to manufacture inconsistent testimony that it could use against Plaintiffs at trial after it issued its inevitable claim denial.  The Policy's cooperation clause does not confer on Liberty the right to require continuous and harassing examinations in an effort to create conflicting testimony.

- 10 -

The cases cited in Liberty's Motion are easily distinguishable. In the majority of the cases cited by Liberty, the policyholder refused to submit to EUOs or to testify about certain subjects at all. *See Ayuob v. American Guar. and Liab. Ins. Co.*, 605 F. Supp. 713, 715 (S.D.N.Y. 1985) (policyholder failed to submit to EUOs at all); *Averbuch v. Home Ins. Co.*, 114 A.D.2d 827, 828, 494 N.Y.S.2d 738, 739 (2d Dep't 1985) (policyholder refused to produce documents or answer questions related to the policyholder's financial status or the condition of the property before the loss); *Richie's Corner, Inc. v. National Specialty Ins. Co.*, 598 F. Supp. 2d 274, 275 (E.D.N.Y. 2008) (policyholder refused to answer questions regarding the policyholder's tax returns); *Dyno-Bite, Inc. v. Travelers Cos.*, 80 A.D.2d 471, 473, 439 N.Y.S.2d 558, 560 (4th Dep't 1981) (one corporate representative refused to be examined, and one corporate representative refused to answer questions on his knowledge of the origin of the fire or his activities around the time of the fire). Unlike the policyholders in these cases, Plaintiffs willingly submitted to two full days of EUOs and answered questions on a variety of subjects. Plaintiffs have never refused to testify or answer questions about a potential subject matter posed by Liberty; Plaintiffs have simply objected to unreasonable and repetitive examinations.

Liberty also improperly relies on distinguishable cases in which the policyholder refused to resume an EUO. In *Rosenthal*, the insurance company filed a motion for summary judgment on the basis of the policyholder's refusal to submit to an EUO. *Rosenthal v. Prudential Prop. & Cas. Co.*, 928 F.2d 493, 494 (2d Cir. 1991). The court refused to grant summary judgment, providing the policyholder with an opportunity to comply with the cooperation clause under the insurance policy. *Id.* However, despite

- 11 -

this directive of the court, the policyholder continued to cancel and delay the scheduled EUOs for a period of five months. *Id.* When the policyholder finally submitted to an EUO, he testified for only two hours before terminating the examination of his own accord. *Id.* The court granted the insurance company's second motion for summary judgment.

Unlike the policyholder in *Rosenthal*, the Plaintiffs in this matter submitted to EUOs promptly after Liberty's initial demand for examinations. *See* Liberty SOF ¶¶ 8, 10; O'Connor Aff., Exs. H, I, & K. The EUOs were conducted for two full days -- far longer than Rosenthal's two-hour EUO -- and Liberty, not the Plaintiffs, chose to end the examinations when it did. *See generally* O'Connor Aff. Exs. I-L; O'Connor Aff. Ex. T. Plaintiffs remained willing to submit to further EUOs on previously unexamined subjects, as distinguished from Rosenthal's outright refusal. *See* O'Connor Aff., Exs. R & T.

Similarly, in *Stradford v. Zurich Ins. Co.*, the policyholder submitted to an EUO but refused to resume the EUO at a later date. *Stradford v. Zurich Ins. Co.*, 02 Civ. 3628 (NRB), 2002 U.S. Dist. LEXIS 24050, at *5 (S.D.N.Y. Dec. 10, 2002). Unlike the policyholder in *Stradford*, Plaintiffs have never outright refused to resume their EUOs, but have only objected to additional EUOs covering the same subject matter for which they previously were examined thoroughly. *See* O'Connor Aff., Exs. R & T.

Liberty relies most heavily on *Somerstein Caterers of Lawrence, Inc. v. The Ins. Co. of the State of Pennsylvania*, an unreported supreme court decision that is also distinguishable.[2] *Somerstein Caterers of Lawrence, Inc. v. Ins. Co. of State of Pa.*, Index No. 12166/96 (Sup. Ct. New York City Oct. 30, 1998). In *Somerstein*, the

---

[2]       Liberty attached a copy of the *Somerstein* court's order to its Memorandum of Law.

policyholder produced its president for an EUO almost ten months after the insurance company's request. *Somerstein*, p. 3. The insurance company questioned the policyholder's president about numerous matters, excluding a pending investigation by the U.S. Attorney General. *Id.* Upon conclusion of the president's EUO, the insurance company requested that the policyholder submit its treasurer for EUOs. *Id.* The policyholder agreed, but refused to produce the treasurer for questioning on any subjects discussed by the president during his EUO. *Id.* at 4. The insurance company requested further EUOs of the president, this time on the subject of the Attorney General investigation and indictment, but the policyholder also refused this demand. *Id.* at 4-5. Upon motion, the supreme court granted summary judgment for the insurance company. *Id.* at 14-15.[3]

In *Somerstein,* the policyholder's refusal to produce the president for EUOs on a particular subject denied the insurance company an opportunity to ever question the policyholder on that subject. The policyholder's refusal to produce its bookkeeper for examination on subjects discussed by the president denied the insurance company the opportunity to obtain the bookkeeper's personal knowledge on those issues. These are not the facts before this Court. Here, Liberty was given extensive opportunity to question both Plaintiffs about any relevant matter during two days of EUOs, and Liberty refused Plaintiffs' offer to question both Plaintiffs about any

---

[3]    Liberty represents to this Court that the First Department has adopted the decision of the trial court. Liberty Motion, p. 5. However, the First Department's decision only references the policyholder's refusal to produce the bookkeeper for EUOs. *See Somerstein Caterers of Lawrence, Inc. v. Ins. Co. of State of Pa.*, 262 A.D.2d 252, 692 N.Y.S.2d 369 (1st Dep't 1999). The First Department does not appear to base its decision on the policyholder's refusal to produce the president for further EUOs. *Id.* Nevertheless, as discussed above, Plaintiffs' objection to additional EUOs on previously discovered subject matters is clearly distinguishable.

additional relevant matters not addressed at the original EUOs.  *See* O'Connor Aff.,

Exs. R & T.   Plaintiffs are not seeking to "dictate the subjects to be discussed," but

simply to limit Liberty's unreasonable attempts to conduct excessive examinations on

subjects already fully discovered.  *Somerstein*, p. 11.  Liberty's right to a thorough

investigation does not include the right to question the Plaintiffs repeatedly on the same

issues in an effort to create inconsistencies.

  Tellingly, in its Motion, Liberty does not even address Plaintiffs' contention

that its requests for additional EUOs were unreasonable because they would be

repetitive of prior EUOs, other than to summarily conclude that Plaintiffs' refusal to

submit to additional EUOs was "improper."  Liberty Motion, p. 9.  Similarly, Liberty

contends that Plaintiffs' refusal to submit to duplicative EUOs "severely frustrated

Liberty's investigative efforts," but Liberty fails to give <u>any</u> explanation of how this was

so, despite having been able to depose Plaintiffs for an additional two days in this

litigation. *Id.*

  The record clearly reflects Plaintiffs' immediate and extensive cooperation

with Liberty as a matter of law.  Accordingly, Plaintiffs request that this court exercise its

power under Federal Rule of Civil Procedure 56(f)(1) to grant summary judgment in

favor of Plaintiffs.  Fed. R. Civ. P. 56(f)(1).  There is no genuine issue of material fact

concerning Plaintiffs' full cooperation with all reasonable requests for EUOs.  Thus,

Plaintiffs are entitled to summary judgment that they fulfilled their obligations under the

cooperation clause.  In the alternative, at a bare minimum, Liberty's Motion should be

denied as issues of fact preclude summary judgment in Liberty's favor.[4]

---

[4] In its Motion, Liberty requests that the Court dismiss Plaintiffs' complaint.  However, New York courts are hesitant to unconditionally dismiss a policyholder's complaint for failure to

## III.    Judicial Estoppel Has No Application Here

In its Motion, Liberty argues that both Plaintiffs should be judicially

estopped from seeking 50% of their suffered personal property damages based on

statements made by Richard Hall in statements filed with the bankruptcy court during

his 2009 bankruptcy.  Liberty Motion, p. 1.  Liberty's argument fails.  The statements

identified by Liberty are not inconsistent.  Moreover, statements by Hall cannot be used

to estop Laskowski in this proceeding.  Thus, Liberty is not entitled to limit Laskowski's

recovery to 50% of his personal property damages, and Liberty's motion should be

denied.

"The doctrine of judicial estoppel prevents a party from asserting a factual

position in a legal proceeding that is contrary to a position previously taken by him in a

prior legal proceeding." *In re Trace Int'l Holdings, Inc.*, No. 04 Civ. 1295 (KMW), 2009

WL 1810112, at *2 (S.D.N.Y. June 25, 2009).  In the Second Circuit, judicial estoppel

applies "if: 1) a party's later position is 'clearly inconsistent with its earlier position; 2) the

party's former position has been adopted in some way by the court in the earlier

proceeding; and 3) the party asserting the two positions would derive an unfair

advantage against the party seeking estoppel." *Chevron Corp. v. Salazar*, 807 F. Supp.

---

comply with the cooperation clause.  The more appropriate approach under such circumstances
is to provide the policyholder with an opportunity to comply with the insurance company's
demands.  *See Mistretta v. Hartford Accident and Indem. Co.*, 275 A.D.2d 356, 356-57, 712
N.Y.S.2d 167, 168 (2d Dep't 2000) (upholding the supreme court's decision to deny the
insurance company's motion for summary judgment and "afford[] the [policyholder] an
opportunity to comply with the [insurance company's] information and document demands");
*Erie*, 66 A.D.3d at 1285, 888 N.Y.S.2d at 645 (referring to unconditional dismissal as an
"extreme penalty" and affirming the supreme court's conditional grant of the insurance
company's summary judgment motion, which provided the policyholder with an opportunity to
comply with the cooperation clause).  Here, Liberty has had the opportunity to depose Plaintiffs
for an additional two days in this litigation.  Thus, any alleged harm to Liberty from Plaintiffs
failure to appear for additional EUOs has been cured, and dismissal is not warranted.

2d 189, 194 (S.D.N.Y. 2011) (quoting *DeRosa v. National Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010)); *see also Mitchell v. Washingtonville Cent. School Dist.*, 190 F.3d 1, 6 (2d Cir. 1999) ("A party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the tribunal in some manner.").

"Moreover, application of judicial estoppel is limited 'to situations where the risk of inconsistent results with its impact on judicial integrity is certain.'" *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of America Securities, LLC*, 716 F. Supp. 2d 236, 240 (S.D.N.Y. 2010) (quoting *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir. 2005); *see also In re Trace Int'l Holdings*, 2009 WL 1810112, at * 3 ("[T]he risk of inconsistent results [must be] certain, [and] courts should ensure that the allegedly inconsistent positions 'cannot be reconciled with any amount of explanation'") (quoting *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 119 (2d Cir. 2004)).

Judicial estoppel has no application here. First, Hall's two positions offered by Liberty are not inconsistent. In determining whether to estop a party from taking a position, a court *must* find that the position taken in the prior judicial proceeding and the position in the current judicial proceeding are definitely inconsistent and "cannot be reconciled with any amount of explanation." *In re Trace Int'l Holdings*, 2009 WL 1810112, at * 3 (quoting *Rodal,* 369 F.3d at 119). Courts refuse to estop a party from taking a position that is found to be reconcilable or not wholly inconsistent with statements made in prior judicial proceedings. *See In re Trace Int'l Holdings*, 2009 WL 1810112, at * 3, 5 (refusing to estop a party because the two positions were

- 16 -

"consistent"); *Pension Comm. of the Univ. of Montreal*, 716 F. Supp. 2d at 240 (refusing

to estop plaintiffs and finding that plaintiffs' prior "contentions simply are not inconsistent

with plaintiffs' current arguments"); *Chevron*, 807 F. Supp. 2d at 195 (denying

defendants summary judgment where "there [was] no inconsistency—let alone a 'clear

inconsistency' with a certainty of an adverse 'impact on judicial integrity'"); *U.S. Fid. &*

*Guar. Co. v. Treadwell Corp.*, 58 F. Supp. 2d 77, 92-93 (S.D.N.Y. 1999) (refusing to

apply estoppel where "the two positions [were] not irreconcilable").

           Here, the prior statement serving as the basis for Liberty's estoppel

argument is Hall's 2009 bankruptcy schedule providing that the value of his personal

property totaled $40,485, of which $1,000 consisted of household goods and

furnishings.[5]  O'Connor Aff., Ex. U.  In support of its conclusion that Plaintiffs are now

taking an inconsistent position, Liberty points to what it characterizes as Plaintiffs'

collective claim for approximately $700,000 in personal property losses, inferring that

Hall is now taking an inconsistent position that he owns and is claiming half of the

personal property damages alleged in this case, with an approximate value of $350,000.

Liberty Motion, p. 13.  Hall, however, does not have a claim for any of the personal

property damages sought in this case, and he made clear at his deposition that he has

not owned the personal property at issue since 2009.  Artese Decl. Ex. 1; O'Connor Aff.

Ex. C at 147:12-15.  Laskowski owns the personal property at issue and is the only

Plaintiff in this case seeking recovery for its damage in the fire.  Laskowski Decl. ¶ 4;

Artese Decl. Ex. 1.  Thus, Hall's statement in his 2009 bankruptcy schedule that he

---

[5]      This is the only statement identified by Liberty that was made by one of the Plaintiffs in a prior judicial proceeding, as required by the elements of judicial estoppel. *Mitchell*, 190 F.3d at 6.

owned $1,000 worth of household goods and furnishings is perfectly consistent with his current position that he owns none of the personal property claimed in this case, which is all owned and claimed in this case by Laskowski.

Second, even assuming Hall's two positions were somehow inconsistent, Hall's prior statement cannot be imputed to Laskowski for the purposes of judicial estoppel. Liberty argues that both Plaintiffs should be estopped from claiming half of approximately $700,000 in contents damages because of statements filed by Hall in his 2009 bankruptcy indicating that he owned a significantly smaller amount of personal property. Liberty Motion, p. 13. However, a party cannot be estopped from asserting a position based on the statements of a separate entity or individual in a prior judicial proceeding. *See Chevron Corp. v. Salazar*, 807 F. Supp. 2d 189 (S.D.N.Y. 2011).

In *Chevron*, the defendants sought a summary judgment estopping Chevron from taking a position that was purportedly inconsistent with a position taken by Texaco in a prior judicial proceeding based on the theory that Chevron had acquired the common stock of Texaco. *Id.* at 192. In effect, the defendants sought "to impute to Chevron statements made by or on behalf of Texaco" in a judicial proceeding in which Chevron was not even a party. *Id.* at 192-93. Despite the relationship of the two corporations, the court refused to disregard "Texaco's corporate existence and imput[e] its statements and positions to Chevron" and denied the defendants' motion for summary judgment. Therefore, as *Chevron* makes clear, Hall's 2009 position before the bankruptcy court cannot be used to estop Laskowski from claiming losses arising out of damage to the personal property at issue in this case.

- 18 -

Thus, Liberty cannot satisfy the elements of judicial estoppel for at least two reasons: (1) neither Hall nor Laskowski has taken an inconsistent position in a prior judicial proceeding; and (2) even assuming Hall's positions were inconsistent, Hall's statement in a prior judicial proceeding to which Laskowski was not a party cannot be used to estop Laskowski from claiming his personal property for the purposes of this judicial proceeding.

Moreover, by asserting its meritless judicial estoppel argument in an attempt to avoid coverage for half of the claimed personal property losses, Liberty seeks to gain a windfall. Plaintiffs paid significant premiums in exchange for insurance coverage for losses of the type sustained by Plaintiffs in this matter. Liberty does not dispute that the property is insured under the Policy or that the property was damaged in the fire. Instead, Liberty attempts to craft an inconsistency based on Hall's bankruptcy schedules in an effort to avoid its contractual obligations. While Liberty pays lip service in its brief to the law of fraudulent conveyances, there has been no determination by any court that a fraudulent conveyance was made, and Liberty offers no evidence to satisfy the elements of fraudulent transfer. Instead, Liberty seeks to skirt its payment obligations under the Policy based on pure conjecture.

For all the foregoing reasons, Liberty's baseless judicial estoppel theory should be rejected.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court (1) deny Liberty's Motion in its entirety, (2) exercise its power pursuant to Federal Rule of Civil Procedure 56(f)(1) to grant summary judgment in favor of Plaintiffs on Liberty's defense based on Plaintiffs' alleged breach of the Policy's cooperation clause, and (3) grant such other and further relief as this Court deems just and proper.

Dated:  April 30, 2012

By:   /s/ Dennis J. Artese, Esq.
      Finley T. Harckham, Esq.
      Dennis J. Artese, Esq.

ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY  10020
Telephone:  212-278-1000

Attorneys for Plaintiffs
Mark R. Laskowski and Richard Hall