UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**MARK R. LASKOWSKI et al.,**

                  Plaintiffs,              5:11-cv-340
                                              (GLS/ATB)

      v.

**LIBERTY MUTUAL FIRE**
**INSURANCE COMPANY,**

                  Defendants.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFFS:** | |
| Anderson, Kill Law Firm | DENNIS J. ARTESE, ESQ. |
| 1251 Avenue of the Americas | FINLEY HARCKHAM, ESQ. |
| 42nd Floor | |
| New York, NY 10020-1182 | |
| | |
| **FOR THE DEFENDANT:** | |
| Hiscock, Barclay Law Firm | THOMAS J. O'CONNOR, ESQ. |
| 50 Beaver Street | |
| Fifth Floor | |
| Albany, NY 12207-2830 | |

**Gary L. Sharpe**
**Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

    Plaintiffs Mark R. Laskowski and Richard Hall commenced this diversity action against defendant Liberty Mutual Fire Insurance Company

under 28 U.S.C. § 1332 claiming, among other things, breach of a fire insurance policy. (*See* Compl., Dkt. No. 1.) Pending is Liberty's motion for summary judgment. (*See* Dkt. No. 48.) For the reasons that follow, the motion is denied.

## II. Background

### A. Facts[1]

On January 10, 2010, a second home owned by Laskowski and Hall,[2] and its contents, which included valuable antiques, were damaged in a fire. (*See* Def.'s Statement of Material Facts (SMF) ¶¶ 1-2, Dkt. No. 50; Dkt. No. 54, Attach. 1 ¶ 3.) In February 2010, Laskowski and Hall submitted claims for their losses to Liberty, which insured both the residence and its contents. (*See* Dkt. No. 49, Attachs. 6, 7.) The prevailing fire insurance policy provided that, after a loss, the insureds, Laskowski and Hall, were required to cooperate with Liberty by submitting to an examination under

---

[1] Unless otherwise noted, the facts are undisputed.

[2] It is noted that, in July 2009, Hall filed for bankruptcy, (*see* Dkt. No. 49, Attachs. 22-23)—a fact which was apparently uncovered during Liberty's investigation of the claims later made by Laskowski and Hall. (*See* Dkt. No. 48, Attach. 1 ¶¶ 3-4.) Hall did not include any of the antiques or other personal property that was later damaged in the fire on his bankruptcy schedules, indicating that he had no ownership interest in that property at the time of the bankruptcy proceeding. (*See* Dkt. No. 49, Attach. 10 at 242-44.)

2

oath (EUO) "[a]s often as [Liberty] reasonably require[d]."[3] (Dkt. No. 48, Attach. 2 at 18.)  Consistent with that condition of cooperation, in April 2010, Liberty, which had already "determined that the fire in question was other than natural or accidental in origin," demanded that Laskowski and Hall appear for an EUO.  (Dkt. No. 49, Attach. 8.)  Laskowski and Hall appeared as required in May 2010 and, for two days, answered questions posed by Liberty regarding their loss.  (*See* Dkt. No. 49, Attachs. 9-13.)  At the conclusion of the EUOs, Liberty's counsel stated: "That will conclude today's examination under oath.  We're going to continue, of course, as soon as we get the transcripts to you and reviewed and we receive the claim documentation, which hopefully will be forthcoming shortly." (Dkt. No. 49, Attach. 13 at 191.)

In July 2010, Liberty made a another demand on Laskowski and Hall that they appear for additional EUOs.  (*See* Dkt. No. 49, Attach. 14.)  Laskowski and Hall objected, claiming that more EUOs would be unreasonable because the initial examinations were "lengthy and thorough"

---

[3] This provision, which required Laskowski and Hall to cooperate with Liberty's investigation, tracks the language of "the standard fire insurance policy of the state of New York."  N.Y. Ins. Law § 3404(e) (McKinney 2010) ("The insured, as often as may be reasonably required, shall . . . submit to examinations under oath.").

3

and "fully explored" the relevant issues. (Dkt. No. 49, Attach. 15 at 3.) Laskowski and Hall also requested that Liberty inform them of what other subject areas it felt were "necessary to explore so that [they could] further consider whether [the] request for further EUOs [wa]s reasonable." (*Id.*) In September 2010, Liberty made an additional demand; Laskowski and Hall again objected and reiterated their request regarding the topic areas to be explored in follow-up examinations. (*See* Dkt. No. 49, Attachs. 16, 17.)

Liberty made yet another demand in October 2010 and also advised Laskowski and Hall that their continued failure to submit to its request "may result in a forfeiture of their rights under the policy." (Dkt. No. 49, Attach. 18.) Laskowski and Hall responded by explaining that they viewed further EUOs on previously covered topics as unreasonable; however, they agreed to answer questions "on subject matters not previously covered." (Dkt. No. 49, Attach. 19 at 2.) Liberty interpreted Laskowski and Hall's response as a refusal to submit to EUOs as required by the policy. (*See* Dkt. No. 49, Attach. 20.) One last time, Laskowski and Hall offered to appear, but, again, only for questioning on topics that were not previously covered. (*See* Dkt. No. 49, Attach. 21.) On January 11, 2011, Liberty notified Laskowski and Hall that it was rejecting their claims because they

4

violated the policy by: (1) failing to "appear for a continued [EUO]"; (2) engaging in concealment and fraud; and (3) intentionally causing their loss. (Dkt. No. 48, Attach. 3.)

## B.  Procedural History

Laskowski and Hall commenced the instant action, which was transferred to this District from the Southern District of New York, on February 16, 2011. (*See* Compl.; Dkt. No. 9.) Liberty thereafter moved for partial dismissal of the Complaint, and this court granted that motion in its entirety, leaving only a claim for breach of contract. (*See* Dkt. Nos. 13, 34.) Liberty joined issue and asserted a counterclaim against Laskowski and Hall, which has gone unanswered,[4] for indemnification in the event that it is determined that Laskowski and Hall caused their loss and Liberty has to pay a mortgagee pursuant to the policy's terms. (*See* Dkt. No. 36.)

## III.  Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*,

---

[4] Fed. R. Civ. P. 12(a)(1)(B) requires service of an answer to a counterclaim within twenty-one days after service of the pleading asserting such claim. Laskowski and Hall's time to answer the counterclaim has long since expired.

5

No. 1:09–cv–652, 2011 WL 5599571, *4 (N.D.N.Y. Nov. 17, 2011).

## IV. Discussion

In support of its argument for summary judgment, Liberty asserts that Laskowski and Hall's refusal to submit to further EUOs—except to answer questions on topics not previously covered—constitutes a breach of the policy, which entitled them to deny the claims. (*See* Dkt. No. 51 at 3-9.) Liberty also contends that, should the court deny its motion based on the foregoing argument, Laskowski and Hall should be estopped from recovering more than "50% of claimed personal property losses" because Hall excluded both the antique collection and other jointly-owned personal property, which were later damaged in the fire, from his bankruptcy schedules in an effort to protect his one-half interest in that property. (*See id.* at 9-16.)

Laskowski and Hall counter that Liberty's demand for further EUOs was "unreasonable and unnecessary as a matter of law" and, thus, they were not obligated to appear for them, did not breach the policy, and, under Fed. R. Civ. P. 56(f)(1), are entitled to summary judgment as to their compliance with the cooperation clause. (Dkt. No. 54 at 5-14.) Laskowski and Hall also assert that estoppel is inapplicable here because the position

6

that Hall took in his bankruptcy proceeding is not inconsistent with his position in this action; i.e., Hall testified that he transferred his interest in the damaged personal property to Laskowski prior to the fire and has not made any claim under the policy regarding the contents of the residence. (*See id.* at 15-18.)  Finally, Laskowski and Hall argue that even if Hall's former position is inconsistent, it cannot be imputed to Laskowski.  (*See id.* at 18-19.)  Because summary judgment is inappropriate on either ground, the court denies Liberty's motion.

A.  **EUOs**[5]

Turning first to the issue of Laskowski and Hall's cooperation with Liberty's investigation of their claims, an "insured's willful failure to appear at an EUO constitutes 'a material breach of the cooperation clause and a defense to an action on the policy.'" *Rosenthal v. Prudential Prop. & Cas. Co.*, 928 F.2d 493, 494 (2d Cir. 1991) (quoting *Ausch v. St. Paul Fire & Marine Ins. Co.*, 125 A.D.2d 43, 50 (2d Dep't 1987)).  The burden of establishing such a material breach, as demonstrated by the insured's "willful and avowed obstruction," *In re Empire Mut. Ins. Co. Stroud*, 36

---

[5] In the absence of a choice of law provision in the policy, the parties apparently agree, as does the court, on the application of New York law to Laskowski and Hall's breach of contract claim. (*See, e.g.*, Dkt. No. 51 at 3, 9; Dkt. No. 54 at 6-8.)

7

N.Y.2d 719, 721 (1975) (internal quotation marks and citation omitted), is "'a heavy one'" that must be carried by the insurer. *Ingarra v. Gen. Accident/PG Ins. Co.*, 273 A.D.2d 766, 767 (3d Dep't 2000) (quoting *Levy v. Chubb Ins.*, 240 A.D.2d 336, 337 (1st Dep't 1997)); *see* N.Y. Ins. Law § 3420(c)(1); *Cont'l Cas. Co. v. Stradford*, 11 N.Y.3d 443, 450 (2008). Not every failure to attend an EUO entitles the insurer to deny a claim, however. Indeed, where the insured's conduct was not willful and avowed or where he can offer a "reasonable excuse" for his noncooperation, the insurer will not be permitted to deny the claim on that basis. *Mehtani v. Paul Revere Life Ins. Co.*, No. 94 Civ. 2880, 1995 WL 617229, at *3 (S.D.N.Y. Oct. 20, 1995) (applying New York law); *see Erie Inc. Co. v. JMM Props., LLC.*, 66 A.D.3d 1282, 1284-85 (3d Dep't 2009); *Baerga v. Transtate Ins. Co.*, 213 A.D.2d 217, 217-18 (1st Dep't 1995).

Here, a material—and potentially dispositive—question of fact exists regarding whether Laskowski and Hall's refusal to answer questions at additional EUOs on topics already covered constitutes a material breach of the cooperation clause. Viewing the facts in a light most favorable to Laskowski and Hall, a reasonable jury could find that their refusal did not constitute willful and avowed obstruction or that they had a reasonable

8

excuse. *See Ingarra*, 273 A.D.2d at 768. Unlike several of the cases relied upon by Liberty wherein an insured or its agents failed to submit to any EUOs or refused to answer any questions on certain topics, (*see generally* Dkt. No. 51 at 3-8), Laskowski and Hall gave testimony over a two-day period, Liberty determined "the extent of the questioning [it] chose to conduct," and Laskowski and Hall at no point "decided or requested to end the examinations." (Pl.s' SMF ¶¶ 7-9, Dkt. No. 54, Attach. 7.) Moreover, Laskowski and Hall's refusal only related to what they viewed as unreasonable, repetitive questioning on topics that they considered thoroughly and fully explored. (*See* Dkt. No. 49, Attachs. 15, 17, 19, 21.) At this juncture, Liberty has failed to meet its heavy burden. *See Thrasher v. U.S. Liab. Ins. Co.*, 19 N.Y.2d 159, 168 (1967). In light of the identified issue of fact, judgment for Laskowski and Hall as to their cooperation under Rule 56(f)(1) is also inappropriate.

## B.  Judicial Estoppel[6]

---

[6] While Liberty relies upon New York case law in support of its argument regarding judicial estoppel, (*see, e.g.*, Dkt. No. 51 at 9-10), the Second Circuit has endorsed the application of the federal judicial estoppel doctrine to diversity cases. *See Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 45 (2d Cir. 2005); *see also Intellivision v. Microsoft Corp.*, 784 F. Supp. 2d 356, 363 (S.D.N.Y. 2011); *Vitrano v. State Farm Ins. Co.*, No. 08 Civ. 103, 2009 WL 3365866, at * 4 (S.D.N.Y. Oct. 19, 2009). The court, therefore, proceeds by applying the federal doctrine, which varies from the rule applicable in New York. *See Vitrano*, 2009 WL 3365866, at *4 ("New York State's judicial estoppel doctrine requires that a party take a position inconsistent with a prior position and that a judgment was entered in that party's favor

On the issue of whether Laskowski and Hall should be estopped from recovering more than one-half of their claimed personal property losses, judicial estoppel "applies only in situations where a party both takes a position that is inconsistent with one taken in a prior proceeding, and has had that earlier position adopted by the tribunal to which it was advanced." *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 45 (2d Cir. 2005). The appropriateness of estoppel is informed by three factors: whether (1) the later position advanced is clearly inconsistent with an earlier one; (2) the former position was accepted by a court; and (3) the party advancing "an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

Here, estoppel is not warranted on the facts now before the court. Despite the fact that Hall did not list the antiques and other personal property on his bankruptcy schedules, (*see* Def.'s SMF ¶ 65; Dkt. No. 49, Attach. 10 at 242-244), the position he has taken now is not "'clearly

---

as a result of the prior court adopting the inconsistent position. In contrast, the federal doctrine, as applied in this Circuit, requires only that the party to be estopped have argued an inconsistent position in a prior proceeding and that the prior court adopted that position." (internal citations omitted)).

inconsistent'" with his prior position of non-ownership. *New Hampshire*, 532 U.S. at 750 (quoting *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999)); (*see* Dkt. No. 49, Attach. 3 at 150-51.) Hall testified that he probably transferred the property in question to Laskowski "[s]ometime in 2009"—in advance of the fire—knowing that his failure to include the property would protect it from his creditors. (Dkt. No. 49, Attach. 3 at 151-52) Currently, Hall does not seek recovery as to the personal property damaged or destroyed by the fire, (*see* Pl.s' SMF ¶ 5); in fact, only Laskowski made a claim as to that property, which he also contends he owned solely at the time of the fire. (*See id.*; Dkt. No. 54, Attach. 1 ¶ 4, Attach. 3 at 7.) While the court certainly does not condone furtive conduct in bankruptcy proceedings, estoppel is inappropriate on these facts at this time.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Liberty's motion for summary judgment (Dkt. No. 48) is **DENIED**; and it is further

**ORDERED** that, upon the resolution of any outstanding discovery matters, this case is deemed trial ready and the court, in due course, shall

issue a trial scheduling order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

Albany, New York
June 11, 2012

_____
Gary L. Sharpe
Chief Judge
U.S. District Court