UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**MARK R. LASKOWSKI and
RICHARD HALL**,

*Plaintiffs*,

-*vs*-

**LIBERTY MUTUAL FIRE INSURANCE
COMPANY**,

*Defendant*.

---

**REPLY DECLARATION OF
THOMAS J. O'CONNOR**

Civil Action No. 5:11-cv-340
(GLS/ATB)

**THOMAS J. O'CONNOR**, hereby declares as follows:

1.      I am trial counsel for the Defendant in this matter.

2.      I submit this Declaration in reply to the answering papers served by the Plaintiffs, and in particular, the declaration of Alan J Pierce,  the essence of which is that this case is far too complex to be settled by a mere verbal agreement.  We disagree for the reasons set forth below and in our motion and reply papers.

3.      I have reviewed the Declaration of Alan J. Pierce (April 6, 2015, ¶5) in which he disputes the representation in my January 22, 2015 Declaration at ¶27 in which I state there is "no future performance to be determined and no technical terms left to be agreed upon and no lengthy settlement conditions at issue."

4.      Counsel further argues that my letter to Attorney Kevin P. Kuehner of January 15, 2015 (O'Connor Declaration Exhibit A) also contradicts the statement of my January 22, 2015 Declaration at ¶27 because the following language is included in that letter:

- 1 -

> We consider this case settled according to the terms on which we agreed, by which your clients are responsible for dealing with the public adjustor lien and the lien from previous counsel.

5.      Counsel further claims (Pierce Declaration, ¶14) that in his "28+ years of experience" he "cannot believe" that this action would be settled without a substantial written settlement agreement" given the outstanding issues such as the mortgage, attorneys' lien and public adjustor's lien.

6.      He goes on to cite a case in the Northern District which involved a thirteen (13) page confidential settlement agreement (Pierce Decl. ¶15) which purportedly involved Liberty Mutual, claiming that a settlement agreement with Liberty Mutual is the standard, not the exception in his experience.

7.      What Mr. Pierce neglects to tell us about the case he recently settled, was whether or not it is a liability coverage case or a property coverage case.  The former having the potential of being far more complicated than a law suit on a property insurance contract, which typically may involve, a public adjustor's lien for services rendered, and/or the interest of a mortgagee.

8.      My insurance coverage practice focuses on property insurance coverage and I have settled hundreds of such cases since I joined the Albany firm of Bouck, Holloway, Kiernan & Casey in January 1978 which specialized in property insurance litigation.  While it may have happened on occasion, I do not recall any property insurance case in which the insured's interest was settled pursuant to a written settlement agreement.   Certainly, many of those cases were settled on the record in open Court, but the majority were not.

9.      In this case I had discussed the public adjustor's lien and the attorneys' lien with Plaintiff's counsel, who understood he had to make an arrangement with the public adjustor as to

the reasonable value of the services they rendered.  Further, he told me he had informed his clients that he had to make an application to Judge Sharpe to resolve the charging lien of Anderson, Kill.  He further advised his clients, that Judge Sharpe would have to make a decision on how the settlement funds would be distributed and it was Mr. Kuehner's intention to argue that former counsel did not deserve their fee.  Accordingly, Mr. Kuehner intended to ask the Court to either extinguish that lien or dramatically reduce it.  Counsel indicated his client knew the outcome of the process now could not be predicted.

10.     We advised Mr. Kuehner that the mortgagee, in this case, would not be named on our settlement check, since the two year contractual time limitation on an action on the policy had long since run and they had made no attempt to intervene in this action, and in our judgment, were not entitled to any of the proceeds of the policy of insurance.  Therefore, the check would be issued without naming the mortgagee.

11.     Mr. Pierce goes on to suggest; (Pierce Dec. ¶17) that the two redacted settlement agreements which he submitted collectively as Exhibit 3 to his Declaration were on forms provided by Liberty Mutual to his office on two claims, which he offers as proof that "…Liberty Mutual does not normally settle with just a Release in exchange for a check especially, whereas, here there are outstanding liens and a number of issues involved in the settlement".

12.     Submitted herewith is the Reply Declaration of Brian Ronda who handled one of the claims referred to by Mr. Pierce in ¶17 of his declaration.  Mr. Ronda agrees that Liberty Mutual does not usually settle a personal injury case with a simple release (Ronda Dec. ¶8) because of the potential for numerous liens that are applicable to personal injury cases, some of which involve the potential of a charge back to the insurance carrier, such as Medicare, Medicaid

9075362.2

and Workers' Compensation liens.  Therefore those releases contain certain representations by the claimant that there are no liens and indemnification language if that is not the case.

13.     However, as Mr. Ronda points out (Ronda Dec. ¶8) property damage cases, typically are, in fact, generally settled with the release in exchange for a check.

14.     I swear under penalties of perjury that the foregoing is true and accurate.


Dated: April 13, 2015                                _____
                                                                   Thomas J. O'Connor

9075362.2