UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MARK R. LASKOWSKI and RICHARD HALL,

                        *Plaintiffs,*

      -against-

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

                        *Defendant.*

Civil Action No.
5:11-cv-340 (GLS/ATB)

---

## DEFENDANT LIBERTY MUTUAL FIRE INSURANCE COMPANY'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO ENFORCE THE PARTIES' SETTLEMENT AGREEMENT

Thomas J. O'Connor, Esq.
Benjamin D. Heffley, Esq.
    *of Counsel*

HISCOCK & BARCLAY, LLP
Office and Post Office Address
80 State Street
Albany, New York 12207-2830
Telephone: (518) 429-4276
Facsimile: (518) 427-3474
E-Mail: toconnor@hblaw.com

9063042.4

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

    POINT I    ATTORNEY KUEHNER HAD ACTUAL AUTHORITY TO SETTLE THIS ACTION ............................................................................................................. 1

    POINT II   THERE WAS A MEETING OF THE MINDS ON ALL MATERIAL TERMS OF THE SETTLEMENT .................................................................................. 3

    POINT II   THE PARTIES' INTENTION TO EXECUTE A WRITTEN STIPULATION DOES NOT INVALIDATE THE ORAL SETTLEMENT ............................... 7

CONCLUSION ........................................................................................................................ 8

# TABLE OF AUTHORITIES

**Cases**

*Blinds & Carpet Gallery, Inc. v EEM Realty, Inc.*, 34 Misc. 3d 1228(A) (N.Y. Sup. Ct. 2012) ... 4

*Credit Suisse First Boston Corp. v. Cooke*, 284 A.D.2d 365 (2d Dep't 2001) ............................... 4

*Delgrosso v. City of New York*, 2013 U.S. Dist. LEXIS 138990 (E.D.N.Y. 2013) ........................ 2

*Etablissement Asamar Ltd. v. Lone Eagle Shipping*, 882 F. Supp. 1409 (S.D.N.Y. 1995) ............ 4

*Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, 2005 U.S. Dist. LEXIS 11130 (S.D.N.Y. 2005) .................................................................................................................. 4

*Keryakos Textiles v. CRA Dev.*, 167 A.D.2d 738 (3d Dep't 1990) .................................................. 4

*Pereira v. Sonia Holdings (In re Artha Mgmt.)*, 91 F.3d 326 (2d Cir. 1996) ................................ 1

*Powell v. Omnicom*, 497 F. 3d 124 (2d Cir. 2007) ........................................................................ 2

*Sorensen v. CONRAIL*, 992 F. Supp. 146 (N.D.N.Y 1998) ............................................................ 4

*Thor Props., LLC v. Willspring Holdings LLC*, 118 A.D.3d 505 (1st Dep't 2014) .................... 3, 4

*Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78 (2d Cir. 1985) ....................................... 4

**Other Authorities**

1-3 Corbin on Contracts § 3.40 ....................................................................................................... 3

## PRELIMINARY STATEMENT

Liberty Mutual Fire Insurance Company ("Liberty") submits this Memorandum of Law in further support of its motion to enforce its settlement agreement with Plaintiffs Mark Laskowski and Richard Hall (collectively "Plaintiffs").

As set forth below, Plaintiffs have failed to establish that their former attorney lacked authority to settle or that the parties did not form a valid and enforceable oral settlement agreement.

## STATEMENT OF FACTS

Liberty respectfully refers the Court to the Declarations of Thomas J. O'Connor and Brian Ronda, as well as to its original motion papers, for a full recitation of the facts material to this motion.

## ARGUMENT

### POINT I

### ATTORNEY KUEHNER HAD ACTUAL AUTHORITY TO SETTLE THIS ACTION

Although discussed in Liberty's original moving papers, it bears repeating that "because of the unique nature of the attorney-client relationship, and consistent with the public policy favoring settlements, [courts] presume that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so." *Pereira v. Sonia Holdings (In re Artha Mgmt.)*, 91 F.3d 326, 329 (2d Cir. 1996).

As a result, a party challenging that attorney's authority to settle "bears the burden of proving by affirmative evidence that the attorney lacked authority." *Id.*

1

9063042.4

Here, Plaintiffs offer only vague, identical, self-serving declarations which merely conclude that they did not authorize their former attorney, Mr. Kuehner, to accept $95,000 to settle the case. This is insufficient to cast doubt on Mr. Kuehner's own sworn statement to the contrary.

Notably, Plaintiffs acknowledge that they had lengthy discussions with Mr. Kuehner on the topic of settlement. They acknowledge receiving the phone call in which Mr. Kuehner claims he received the settlement authority. Nowhere in Plaintiffs' declarations do they deny that they gave Mr. Kuehner some degree authority. Indeed, they acknowledge an awareness that Mr. Kuehner was engaging in settlement negotiations with Liberty and that he discussed with them the possibility of settling for $75,000.

Plaintiffs' version of events matches Mr. Kuehner's in nearly every way but the outcome. However, they do not elaborate on the contents of their discussions or provide any further details to shed light on their claims. They offer only a bald denial. Given the circumstances, it is incredible that Mr. Kuehner would have arbitrarily chosen $95,000 as the limit of his authority without Plaintiffs' consent.

It is not Liberty's burden to produce e-mails or documents from Plaintiffs confirming Mr. Kuehner's settlement authority. Rather, it is Plaintiffs' burden to show that Mr. Kuehner lacked authority. They have failed to do so. *See, e.g., Delgrosso v. City of New York*, 2013 U.S. Dist. LEXIS 138990 at *15 (E.D.N.Y. 2013) (finding that an attorney had actual authority to settle where the attorney and his co-counsel provided detailed and specific accounts of their discussions with plaintiff confirming that the attorney had authority, while the plaintiff provided few details other than a blanket assertion that he did not authorize settlement).

## POINT II

## THERE WAS A MEETING OF THE MINDS ON ALL MATERIAL TERMS OF THE SETTLEMENT

Plaintiffs claim that, even if their attorney had authority, Liberty did not accept their counsel's offer before it was extinguished and, even if it did, the parties did not agree on all of the material terms of settlement.

Plaintiffs claim that Liberty did not accept their counsel's offer to settle for $95,000, but rather made a counteroffer of $75,000, thus extinguishing the original offer and invalidating Liberty's subsequent acceptance. This contention is without merit.

Both Liberty and Plaintiffs' former counsel – who had firsthand knowledge of settlement negotiations – state that the $95,000 offer was never rejected, nor did Liberty make a counteroffer. Rather, they agree that both attorneys decided to explore whether a lower settlement was possible.

"Just as 'requests' and 'suggestions' do not turn an otherwise absolute acceptance into a conditional one, so too they do not constitute counteroffers." 1-3 Corbin on Contracts § 3.40. As noted in Corbin, inquires such as "Is this your lowest price?"; "If I doubled the amount, I suppose you would make the price lower?"; or "Would you consider a structured settlement with a different payment arrangement?" do not amount to counteroffers. There is no implicit rejection of the original offer, and so such inquiries do not affect the power to accept it. *Id.*

The cases Plaintiffs cite in support of their assertion that Liberty made a counteroffer, and so rejected their original $95,000 offer, are distinguishable from the matter at issue.

3

In *Thor Props., LLC v. Willspring Holdings LLC*, 118 A.D.3d 505 (1st Dep't 2014), for example, there were a series of offers and counteroffers with no mutual agreement. There, the seller had replied to a draft of the purchaser's letter of intent on December 6th with handwritten proposed changes. The purchaser sent a revised letter of intent on December 7th which did not incorporate a material term that the seller had demanded. That letter required the seller's acceptance by the end of the day. *Id.* at 507. That day, the seller expressly rejected the December 7th letter and promised to call to discuss "where [the parties] go." *Id.* On December 10th, the purchaser forwarded a signed copy of the December 6th draft letter with initials next to the seller's handwritten changes and sued to enforce the sale. *Id.* The Court found that the purchaser's December 7th letter was a counteroffer and a rejection of the seller's proposed offer of December 6th. *Id.* at 508.

*Etablissement Asamar Ltd. v. Lone Eagle Shipping*, 882 F. Supp. 1409 (S.D.N.Y. 1995) is similarly distinguishable. There, the defendant indicated that it would settle for 35% of the amount due, which amounted to $33,516.93. The plaintiff responded that the offer was too low, but that it would accept $40,000. The defendant then unsuccessfully argued that the $40,000 counteroffer itself was an acceptance of their 35% offer, regardless of the fact that the price terms were different. *Id.* at 1411-1412.

The facts of these cases – and the related cases Plaintiffs cite (*see Keryakos Textiles v. CRA Dev.*, 167 A.D.2d 738, 738 [3d Dep't 1990] [holding that an offeree did not accept an offer where its purported acceptance was conditioned on new terms contradicting those in the original offer]; *Blinds & Carpet Gallery, Inc. v EEM Realty, Inc.*, 34 Misc. 3d 1228[A] [N.Y. Sup. Ct.

4

2012] [same holding]; *Credit Suisse First Boston Corp. v. Cooke*, 284 A.D.2d 365 [2d Dep't 2001] [same holding]) – bear no resemblance to the facts here.

Liberty is not seeking to revive a rejected and expired offer, as in *Thor*. It is not trying to bind Plaintiffs to a counteroffer it never accepted, as in *Etablissement*. Nor is it trying to enforce an agreement it only conditionally accepted, as in *Keryakos, Blinds & Carpet* and *Credit Suisse*. Rather, Liberty unconditionally accepted Plaintiffs' settlement offer while that offer was still open.

In Mr. Kuehner's letter to the Court, which was incorporated as an exhibit to his declaration, he states that:

> [Liberty's] earlier responses to the settlement discussions were never rejections, but were informative in nature. Mr. O'Connor indicated he had a certain amount of money and wanted to know how much more was needed [to] settle the case.

Ex. A to Kuehner Decl. at pg. 3.

So at Liberty's request, Mr. Kuehner inquired into whether his clients would accept a settlement in the range of $75,000. They indicated that they would not and asked if Liberty could "come up with the extra $20,000." *Id.* at pg. 2. Mr. Kuehner then advised Liberty's counsel of this conversation.

As stated in Mr. Kuehner's letter:

> Shortly thereafter I spoke with Mr. O'Connor on the telephone and he reaffirmed [Liberty's] willingness to work with us to get the case resolved. He said that [Liberty] would be willing to offer more than $75,000.00 in the face of the plaintiffs' reluctance to accept less than $95,000.00.

*Id.*

5

A fair reading of this account confirms that Plaintiffs' offer to settle for $95,000 was still open and, indeed, reaffirmed after Mr. Kuehner's discussions with his clients. Mr. Kuehner's statement to Plaintiffs as to what he believed the ceiling of any settlement would be does not change the fact that the parties were negotiating.

There was no need for Mr. Kuehner to "resurrect" the $95,000 demand because Liberty never rejected it. However, even if Liberty's inquires could be considered a counteroffer, Mr. Kuehner's statements demonstrate that the $95,000 demand was on the table at the time Liberty accepted it. Whether because the original offer never closed or because Plaintiffs renewed it after rejecting a counteroffer, the result is still the same.

Similarly, there is no factual support for Plaintiffs' contention that the Anderson Kill charging lien, the Plaintiffs' mortgage or any other liens or obligations represented unresolved issues in this settlement. Plaintiffs do not claim that these topics were ever negotiated, nor do they claim that the lien issues could be resolved in any other way than by their signature on a simple release.

Indeed Plaintiffs' declarations directly undercut their argument. In discussing these liens and their other financial obligations, Plaintiffs merely aver that "there is no way [they] could afford to settle this action for $95,000." Laskowski Decl. and Hall Decl. at ¶ 13. This does not show that those issues were unresolved. It shows that Plaintiffs regret the dollar amount of the settlement.

6

Ultimately, as in *Sorensen v. CONRAIL*, 992 F. Supp. 146, 151 (N.D.N.Y 1998), the settlement here is "exceedingly simple." Liberty agreed to pay Plaintiffs $95,000 in exchange for a release and stipulation of dismissal. There were no other terms left to resolve.

## POINT III

### THE PARTIES' INTENTION TO EXECUTE A WRITTEN STIPULATION DOES NOT INVALIDATE THE ORAL SETTLEMENT

It is well-settled in the Second Circuit that "[p]arties may enter into a binding contract orally, and the intention to commit an agreement to writing, standing alone, will not prevent contract formation." *Powell v. Omnicom*, 497 F.3d 124, 129 (2d Cir. 2007) (citing *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 [2d Cir. 1985]); *see also Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, 2005 U.S. Dist. LEXIS 11130 at *18 (S.D.N.Y. 2005).

Once a valid settlement is reached, it is binding on all parties, even if one party changes its mind before the agreement is reduced to writing. *See Powell*, 497 F. 3d at 129.

Plaintiffs' counsel claims that an insurance company like Liberty would never orally settle a case without getting something in writing. Liberty acknowledges that it would seek a signed release from Plaintiffs before paying the settlement. However, that release would do nothing more than memorialize the orally-agreed settlement terms, as would be typical in property damage cases such as this.

As discussed in Liberty's initial moving papers, this is a straight-forward insurance coverage dispute. Throughout the course of this litigation, there has only been one term at issue: the dollar amount, if any, to which Plaintiffs were entitled.

Mr. Pierce provides no details about the circumstances surrounding the exemplar settlement agreements he submits in opposition to this motion. This is because agreements of that type are not used in first-party coverage cases like this one, but rather in third-party personal injury matters. *See* Ronda Decl. ¶¶ 5-6.

As the declaration of Liberty employee Brian Ronda confirms, cases like the one at hand are frequently settled with an oral agreement on the dollar amount, a simple release and payment. Ronda Decl. ¶¶ 7-8. Here, there was a valid oral agreement to settle this case for $95,000. The fact that the parties anticipated that Plaintiffs would execute a simple release does not invalidate the oral settlement.

## CONCLUSION

For the reasons set forth above, and in the accompanying declarations and exhibits, Liberty Mutual's motion to enforce the parties' settlement agreement should be granted.

DATED: April 13, 2015                    **HISCOCK & BARCLAY, LLP**

By: _____
Thomas J. O'Connor
Bar Roll No. 103475

*Attorneys for Defendant*
Liberty Mutual Insurance Company
Office and Post Office Address
80 State Street
Albany, New York  12207-2543
Telephone: (518) 429-4276
Facsimile:  (518) 427-3474
E-Mail: toconnor@hblaw.com

8

9063042.4

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MARK R. LASKOWSKI and RICHARD HALL,

        *Plaintiffs,*

 -against-

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

        *Defendant.*

Civil Action No.
5:11-CV-340 (GLS/ATB)

---

## CERTIFICATE OF SERVICE

 I, Thomas J. O'Connor, certify, that on April 13, 2015, I filed a copy of the Defendant's Notice of Motion, Declaration of Thomas J. O'Connor, with attached exhibits, and a Memorandum of Law in support of Defendant's motion with the Clerk of the Court via the CM/ECF system which gave notice to the following attorney:

  Alan J. Pierce, Esq.
  Hancock Estabrook LLP
  100 Madison St., Suite 1500
  Syracuse, New York 13202

           _____
            **THOMAS J. O'CONNOR**
            Bar Roll No. 103475