UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**MARK R. LASKOWSKI et al.,**

              Plaintiffs,              5:11-cv-340
                                                    (GLS/ATB)
      v.

**LIBERTY MUTUAL FIRE
INSURANCE COMPANY,**

              Defendant.
_____

**APPEARANCES:**                      **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Hancock, Estabrook Law Firm       ALAN J. PIERCE, ESQ.
100 Madison Street, Suite 1500     JOHN G. POWERS, ESQ.
Syracuse, NY 13202                  ZACHARY M. MATTISON, ESQ.

**FOR THE DEFENDANT:**
Smith, Rolfes Law Firm             BRIAN P. HENRY, ESQ.
1605 Main Street, Suite 1106
Sarasota, FL 34236

Hiscock, Barclay Law Firm          THOMAS J. O'CONNOR, ESQ.
80 State Street
Albany, NY 12207

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Pending before the court is a motion by defendant Liberty Mutual Fire

Insurance Company to enforce a settlement agreement allegedly entered into with plaintiffs Mark R. Laskowski and Richard Hall. (Dkt. No. 145.) For the reasons that follow, the motion is denied.

## II. **Background**

This matter has endured a long history of discovery disputes, motion practice, substitutions of counsel, and scheduling conflicts. After first being deemed trial ready in June 2012 upon the resolution of Liberty's motion for summary judgment, (Dkt. No. 59), various delays and adjournments have brought the case to its current posture. Most recently, the trial in this action was scheduled to commence on February 2, 2015, (Dkt. No. 102), but the withdrawal of plaintiffs' then-counsel, Kevin Kuehner, resulted in yet another adjournment of the trial date, (Dkt. Nos. 146, 149).

In the meantime, and prior to Kuehner's withdrawal from the case, the parties had been engaging in settlement negotiations by way of various communications between their respective attorneys: Kuehner, on behalf of plaintiffs, and Thomas O'Connor, on behalf of Liberty. The facts relevant to the pending motion all arise from a period of a few days in January 2015.

On January 13, 2015, Kuehner met with plaintiffs to discuss, among

other things, the potential for settling this case without going to trial. (Dkt. No. 145, Attach. 3 at 2.) According to Kuehner, after that meeting concluded, he "recognized that [he] did not have a commitment as to what number would be acceptable" to plaintiffs to settle the case, so he attempted to reach Hall on his cellular telephone; Laskowski answered the call, and indicated that $95,000 would be acceptable to both him and Hall.[1] (*Id.*) Kuehner then reached out to O'Connor to make an "opening demand" to settle the case. (*Id.* at 3; Dkt. No. 145, Attach. 1 ¶ 11.)

The next afternoon, on January 14, Kuehner communicated with O'Connor via telephone, at which time O'Connor "explained that he had $60,000" to offer for settlement, but Kuehner indicated that he was not authorized to accept anything less than $95,000. (Dkt. No. 145, Attach. 3 at 3.) Kuehner states that he "conveyed clearly to . . . O'Connor that $95,000.00 right then resolved the case," but O'Connor did not accept that offer, and, instead, both Kuehner and O'Connor agreed to "go back to [their] respective clients and explore whether $75,000.00 would be sufficient to resolve the case." (*Id.*) Kuehner attempted to contact Hall and

---

[1] Both Laskowski and Hall flatly deny ever authorizing Kuehner to accept $95,000 to settle this case. (Dkt. No. 157, Attach. 2 ¶¶ 2-3; Dkt. No. 157, Attach. 3 ¶¶ 2-3.)

3

Laskowski that day, but was unable to reach them. (*Id.*)

The following morning, on January 15, Hall and Laskowski telephoned Kuehner, at which time Kuehner informed them that Liberty would pay $75,000 to settle the case. (*Id.*) Hall and Laskowski told Kuehner that "they would need to think about" whether they would be willing to accept that offer. (*Id.*) Upon ending that phone call, Kuehner sent an email to O'Connor at 9:37 A.M., notifying him that he had inquired of his clients whether the $75,000 offer would be acceptable and that they would "let [him] know." (*Id.*; Dkt. No. 145, Attach. 2 at 7.) Shortly after that email, O'Connor indicated to Kuehner, over the telephone, that Liberty would be willing to offer more than $75,000, though no specific number was suggested. (Dkt. No. 145, Attach. 3 at 3.) Kuehner left a voicemail with his clients to that effect. (*Id.*) Kuehner also indicated to O'Connor that afternoon that he had not yet heard from his clients. (*Id.* at 4; Dkt. No. 145, Attach. 2 at 6.)

At 3:35 P.M., Hall called Kuehner, and indicated "that $75,000.00 would not work [and] that they wanted their day in court." (Dkt. No. 145, Attach. 3 at 4.) According to Kuehner, while he was on the phone with Hall, he checked his email and discovered a new message from O'Connor,

4

which had been sent at 3:34 P.M., purporting to accept plaintiffs' offer to settle for $95,000.  (*Id.*; Dkt. No. 145, Attach. 2 at 3.)  Kuehner informed Hall and Laskowski of this email, at which time Hall and Lawskowski rejected the proposition and refused to settle the case.  (Dkt. No. 145, Attach. 3 at 4.)  Kuehner sent an email to O'Connor at 3:54 P.M. in which he told him of his clients' refusal to settle.  (*Id.*; Dkt. No. 145, Attach. 2 at 9.)

On January 16, O'Connor filed a letter with the court indicating his "belie[f that] this case has been settled," despite "plaintiffs express[ing] an interest in withdrawing their demand."  (Dkt. No. 110 at 1.)  Kuehner subsequently filed a letter notifying the court that his clients did not believe the case had settled.  (Dkt. No. 111 at 3.)  Ultimately, after Liberty was given permission to file a motion to enforce the settlement, (Dkt. Nos. 113, 115), it filed the instant motion, seeking to have the court enforce the allegedly binding settlement agreement reached by the parties for the amount of $95,000, (Dkt. No. 145).

### III.  Standard of Review

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it."

5

*Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974). "An agreement to end a lawsuit is construed according to contract principles." *United States v. Sforza*, 326 F.3d 107, 115 (2d Cir. 2003). "Accordingly, it requires an offer, an acceptance, and consideration to be enforceable, and will be construed in accordance with the intent of the parties." *Ostman v. St. John's Episcopal Hosp.*, 918 F. Supp. 635, 643 (E.D.N.Y. 1996). "[P]arties may enter into binding oral settlement agreements, so long as the parties intended to be bound." *Marino Inst. of Continuing Legal Educ., Inc. v. Issa*, No. 12 Civ. 4320, 2013 WL 6723614, at *5 (S.D.N.Y. Dec. 20, 2013) (citing *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985)). "A party seeking to enforce a purported settlement agreement has the burden of proof to demonstrate that the parties actually entered into such an agreement." *Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 335 (S.D.N.Y. 2006).

## IV. Discussion

In support of its motion to enforce the parties' purported oral settlement agreement, Liberty argues that the parties reached an agreed settlement, that the relevant factors weigh in favor of enforcing the parties' oral settlement agreement here, and that Kuehner had the authority to

6

settle this action on behalf of plaintiffs. (Dkt. No. 145, Attach. 4 at 1-7.) In response, plaintiffs argue that the parties never formed a binding agreement in the first instance, that the factors weigh against enforcing any oral agreement between the parties, and that Kuehner had neither actual nor apparent authority to settle this action. (Dkt. No. 158 at 2-22.) For the following reasons, Liberty's motion to enforce the settlement is denied.

As relevant here, the Second Circuit has "articulated several factors that help determine whether the parties intended to be bound in the absence of a document executed by both sides." *Winston*, 777 F.2d at 80. The four factors a court is to consider in making this determination are:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Id.*

As noted above, Liberty argues that a valid agreement was reached, and that the four *Winston* factors weigh in favor of enforcing that oral agreement, despite plaintiffs' current contentions that no such agreement

7

was ever formed, and that, even if it were, the *Winston* factors weigh against enforcement in the absence of a written settlement agreement.[2]

At the outset, the court has substantial doubts about whether there was ever a meeting of the minds on a dollar amount, and thus whether the parties formed a binding agreement to settle the case. From the record currently before the court, it is not entirely clear how all parties involved viewed these communications, and whether the exchanged settlement amounts constituted counteroffers and rejections, or mere inquiries into whether certain amounts would be potentially agreeable to all parties involved. In any event, even assuming a preliminary agreement had been reached, the court concludes, after an assessment of the four *Winston* factors, that the parties' purported oral agreement should not be enforced.

## A. <u>Reservation of the Right Not to be Bound in the Absence of a Writing</u>

As to the first factor, Liberty argues that neither party has either expressly or impliedly reserved the right not to be bound absent a signed

---

[2] The court notes that Liberty has sought permission to file a reply. (Dkt. No. 159.) That motion is granted, the proposed reply is deemed filed, and it was considered by the court. *See Bayway Refining Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 227 (2d Cir. 2000) (explaining that a court may accept evidence submitted with a reply where there is no surprise to the nonmoving party, the nonmoving party does not seek to file a sur-reply to respond to the evidence, and the nonmoving party makes no claim that it has contrary evidence).

8

writing. (Dkt. No. 145, Attach. 4 at 2-3.) Plaintiffs do not appear to contest the first factor, or argue that they expressly reserved the right not to be bound in the absence of a writing, and there do not appear to be any facts in the record that would indicate that such a reservation was made. *See Winston*, 777 F.2d at 80 ("[I]f either party communicates an intent not to be bound until he achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract."). This factor therefore leans in favor of enforcing the parties' purported settlement.

**B.     Partial Performance of the Contract**

With respect to the second factor, Liberty argues that it partially performed by refraining from filing its pretrial submissions on January 15, 2015—the date by which pretrial submissions were to be filed with the court, (Dkt. No. 102), and the date on which the purported settlement was reached. (Dkt. No. 145, Attach. 4 at 3-4.) However, this contention is undermined by the fact that, ultimately, the court extended the pretrial submission deadline to January 22 after neither party submitted its pretrial filings, (Dkt. Nos. 114, 115), and all parties did in fact file their submissions by that date, (Dkt. Nos. 116-143). The court struggles to see how Liberty

9

partially performed under the settlement, particularly as there is no partial performance where "the . . . basic elements of consideration that would have been due to [the parties] under the settlement agreement" were not yet provided. *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 325 (2d Cir. 1997). Here, it appears self evident that, under any settlement between the parties, the consideration due would be the payment of money in exchange for a dismissal of this action. There is no indication that either of those things occurred. Thus, there has been no partial performance, and this factor weighs against enforcing the settlement.

C. **Agreement as to All Terms**

Liberty contends that any settlement of this action would contain only one material term—the dollar amount—and that the parties agreed on $95,000. (Dkt. No. 145, Attach. 4 at 4.) However, as discussed above, it is far from clear that the parties ever actually agreed on the $95,000 amount for the settlement. Notably, although Kuehner at some point indicated that $95,000 would resolve the case, that offer was not accepted by Liberty, and both Kuehner and O'Connor then agreed to "explore [with their clients] whether $75,000.00 would be sufficient to resolve the case." (Dkt. No. 145, Attach. 3 at 3.) Plaintiffs then began contemplating that

offer, of $75,000, and ultimately rejected it. (*Id.* at 3-4.)

Additionally, although Liberty argues that the resolution of pending liens against plaintiffs in this case does not represent a "material" term, (Dkt. No. 159, Attach. 4 at 6), O'Connor's own letter to Kuehner, which is attached to his email purporting to "accept" plaintiffs' offer of $95,000, indicates that Liberty "consider[s] this case settled according to the terms on which we agreed, by which your clients are responsible for dealing with the public adjuster lien and the lien from previous counsel," (Dkt. No. 145, Attach. 2 at 5). As noted by plaintiffs in response to Liberty's motion, (Dkt. No. 158 at 10-13), there has been no indication that the parties discussed, or agreed upon, any terms relating to responsibility for these liens. *See R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 76 (2d Cir. 1984) ("A . . . factor is whether there was literally nothing left to negotiate or settle, so that all that remained to be done was to sign what had already been fully agreed to."); *Gomez v. City of N.Y.*, No. 13-CV-1822, 2015 WL 1402193, at *3 (S.D.N.Y. Mar. 26, 2015) (declining to enforce purported settlement where, among other things, the party seeking enforcement "provided no non-conclusory basis for finding that agreement on the [resolution of l]iens was not material to the settlement," and thus finding "that the parties had

11

not reached agreement on all contract terms"). Liberty has, therefore, failed to satisfy its burden to demonstrate that the parties definitively agreed on all material terms. *See Benicorp*, 447 F. Supp. 2d at 340. Accordingly, this factor weighs against enforcing the settlement here.

D. **Whether the Agreement at Issue is the Type of Contract that is Usually Committed to Writing**

As to the final factor, it is clear that settlement agreements are generally committed to writing. *See Ciaramella*, 131 F.3d at 326 ("Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court."); *Gaul v. Chrysler Fin. Servs. Ams., LLC*, No. 1:13-cv-433, 2014 WL 1466491, at *7 (N.D.N.Y. Apr. 15, 2014) ("[A]greements to settle lawsuits are generally in writing."). The parties have no such written agreement here, nor was any settlement agreement entered into the record in open court. Thus, while not dispositive, this factor weighs against enforcement here.

In conclusion, even if the parties were found to have reached some preliminary agreement on a dollar amount, the balance of the *Winston* factors, under these circumstances, does not dictate enforcement of the purported settlement agreement here, which was never reduced to writing

and formally executed by the parties.[3] Liberty's motion to enforce the settlement is therefore denied.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Liberty's motion seeking permission to file a reply brief (Dkt. No. 159) is **GRANTED** and the brief is deemed filed; and it is further

**ORDERED** that Liberty's motion to enforce a settlement (Dkt. No. 145) is **DENIED**; and it is further

**ORDERED** that this case is trial ready and the Clerk shall issue a trial scheduling order in due course; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

May 7, 2015
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
Chief Judge
U.S. District Court

---

[3] The parties have also raised the issue of whether Kuehner had the authority to settle this action on behalf of plaintiffs. (Dkt. No. 145, Attach. 4 at 6-7; Dkt. No. 158 at 13-20.) The court has not endeavored to resolve this issue, as it is unnecessary given the court's conclusion that, even if Kuehner had such authority, and even if the parties had reached some preliminary agreement, the *Winston* factors weigh against enforcing the parties' oral "agreement" here.

13